CLOSED

# Mississippi Electronic Courts
## Seventh Circuit Court District (Hinds Circuit Court - Jackson)
## CIVIL DOCKET FOR CASE #: 25CI1:25-cv-00224-EFP

DAWN BISHOP MCLIN, PHD v. JACKSON STATE
UNIVERSITY et al
Assigned to: Judge Eleanor Faye Peterson

**Upcoming Settings:**

None Found

Date Filed: 03/19/2025
Date Terminated: 03/19/2025
Total Case Age: 0
Jury Demand: None
Nature of Suit: Injunction or Restraining
Order (56)

---

**Plaintiff**

**DAWN BISHOP MCLIN, PHD**

represented by **Chadwick M. Welch**
Heidelberg Patterson Welch Wright
368 Highland Colony Pkwy
RIDGELAND, MS 39157
601-790-1588
Email: cwelch@hpwlawgroup.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**JACKSON STATE UNIVERSITY**

represented by **J. Andrew Mauldin**
Mayo Mallette PLLC
2094 Old Taylor Road, Suite 200
OXFORD, MS 38655
662-236-0055
Email: dmauldin@mayomallette.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**THE MISSISSIPPI BOARD OF
TRUSTEES OF STATE INSTITUTION S
OF HIGHER LEARNING**

represented by **J. Andrew Mauldin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARCUS L THOMPSON PH D**

represented by **J. Andrew Mauldin**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/19/2025 | 2 | COMPLAINT against JACKSON STATE UNIVERSITY, THE MISSISSIPPI BOARD OF TRUSTEES OF STATE INSTITUTION S OF HIGHER LEARNING, MARCUS L |

| | | THOMPSON PH D, filed by DAWN BISHOP MCLIN, PHD. (Attachments: # 1 Civil Cover Sheet,) (Lyons, Dawn) (Entered: 03/19/2025) |
|---|---|---|
| 03/19/2025 | 3 | SUMMONS Issued to MARCUS L THOMPSON PH D. (Lyons, Dawn) (Entered: 03/19/2025) |
| 03/19/2025 | 4 | SUMMONS Issued to THE MISSISSIPPI BOARD OF TRUSTEES OF STATE INSTITUTION S OF HIGHER LEARNING. (Lyons, Dawn) (Entered: 03/19/2025) |
| 03/19/2025 | 5 | SUMMONS Issued to JACKSON STATE UNIVERSITY. (Lyons, Dawn) (Entered: 03/19/2025) |
| 03/19/2025 | 6 | NOTICE of Notice of Removal by JACKSON STATE UNIVERSITY, THE MISSISSIPPI BOARD OF TRUSTEES OF STATE INSTITUTION S OF HIGHER LEARNING, MARCUS L THOMPSON PH D (Attachments: # 1 Exhibit A - Federal Notice of Removal,) (Mauldin, J. Andrew) (Entered: 03/19/2025) |

**IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI**
**FIRST JUDICIAL DISTRICT**

**DAWN BISHOP MCLIN, Ph.D.**

> *Plaintiff,*

> -vs.-

Case No. ⟨05-224⟩

**JACKSON STATE UNIVERSITY,**
**THE MISSISSIPPI BOARD OF TRUSTEES OF**
**STATE INSTITUTIONS OF HIGHER**
**LEARNING, and MARCUS L. THOMPSON, Ph.D.**

> *Defendants.*

## VERIFIED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTION AND OTHER RELIEF

Plaintiff Dawn Bishop McLin, Ph.D. ("Dr. McLin"), through counsel, files this Verified Complaint for Emergency Temporary Restraining Order, Preliminary and Permanent Injunction, and Other Relief ("TRO Complaint") against Defendants set forth herein. Dr. McLin asserts the following claims arising out of the actionable misconduct of the Defendants. In support thereof, Dr. McLin alleges as follows:

### NATURE OF ACTION

1.      This TRO Complaint seeks an emergency temporary restraining order followed by a preliminary and permanent injunction, pursuant to Mississippi Rule of Civil Procedure 65, to prevent the immediate and irreparable injury, loss, or damage that Dr. McLin would incur if Defendants were allowed to continue their suspension of Dr. McLin as a full professor and their refusal to reinstate Dr. McLin as a full tenured faculty member of Jackson State University. Although Dr. McLin seeks other relief, those issues may be decided later. The injunctive relief Dr. McLin seeks is urgent and should be awarded now to avoid ongoing, continuing, and egregious

constitutional harms. *See* Count VII, ¶¶ 92 – 106, *infra*.

## PARTIES

2.       Dawn Bishop McLin, Ph.D., is a resident citizen of the State of Mississippi.

3.       Jackson State University ("JSU") is an agency of the State of Mississippi. It may

be served with process by service upon the Mississippi Attorney General and/or JSU's registered

agent or General Counsel, Onetta Starling Whitley, Esq., or upon any person authorized to accept

process on JSU, wherever such person may be found.

4.       The Mississippi Board of Trustees of State Institutions of Higher Learning ("IHL")

is an agency of the State of Mississippi.  It may be served with process by service upon the

Mississippi Attorney General and/or IHL's registered agent or the Commissioner of Higher

Education, Dr. Alfred Rankins, Jr., or upon any person authorized to accept process on IHL,

wherever such person may be found.

5.       Marcus L. Thompson, Ph.D., ("Dr. Thompson"), is a resident of the State of

Mississippi, and may be served with process at JSU or wherever he may be found.

6.       Dr. McLin sues Dr. Thompson in his individual capacity because Dr. Thompson

committed the wrongful acts detailed in this TRO Complaint outside the course and scope of his

employment. Consequently, Dr. McLin's claims are not subject to the Mississippi Tort Claims Act

("MTCA") Dr. Thompson is not entitled to immunity under the MTCA. *See Jones v. Miss.

Instit. of Higher Learning*, 264 So. 3d 9, 33 (Miss. Ct. App. 2018) (tort claims "may be brought

against a governmental employee in his individual capacity, and the MTCA does not apply"); *see

also id.* ("the MTCA does not apply to a claim for tortious interference with contract" and "[t]he

MTCA and its various requirements, defenses, and exemptions do not apply to a claim properly

filed against an individual employee in his individual capacity").

2

## JURISDICTION AND VENUE

7.      This Court has jurisdiction and venue as the events, acts, or omissions giving rise

to Dr. McLin's claims occurred at JSU, Jackson, Hinds County, Mississippi, and because JSU,

IHL, and Dr. Thompson reside in this district.

## FACTUAL ALLEGATIONS

**Dr. McLin's tenured role at JSU.**

8.      Dr. McLin has a long and deep legacy with JSU. Her family and extended family

attended JSU. She attended JSU. In 2004, Dr. McLin became a tenured-track professor at JSU. In

2010, Dr. McLin became an Associate Professor with tenure in JSU's psychology department. At

the time of her wrongful termination, Dr. McLin was the only faculty member at the rank of

Professor in the Department of Psychology.

9.      As a tenured professor, Dr. McLin had a constitutionally protected property interest

in her employment.

10.     Dr. McLin was a highly accomplished and respected professor and member of

JSU's faculty.

11.     In addition to serving as a tenured professor of psychology, Dr. McLin took on

other important and impactful roles. For example, she was selected by the IHL to serve on

committees providing advice for JSU community listening sessions and presidential searches,

which underscores her expertise, leadership, and commitment to JSU's governance and future. Dr.

McLin also co-led JSU's Covid-19 Reopening Task Force. Dr. McLin's leadership in this initiative

further highlights her steadfast dedication to JSU's mission, her ability to collaborate across

departments, and her critical role in supporting JSU during an unprecedented and challenging time.

12.     At the time of her wrongful termination, Dr. McLin was responsible for securing, researching and administered grants funded by the National Sciences Foundation, National Academies of Sciences, and United States Department of Homeland Security. Dr. McLin served as academic and research advisor to students at the undergraduate and graduate levels. She also served on graduate students' dissertations committees.  For the past few years, Dr. McLin served as the Standard Bearer for Jackson State University's Commencement and Founders' Day ceremonies, a prestigious honor reserved for distinguished faculty who exemplify the university's values and commitment to excellence. During the May 2024 Commencement exercises, Dr. McLin was on the dais and spoke to hundreds of graduates and attendees. This is significant because the final approval for the commencement program and speakers comes from the University President, Dr. Marcus Thompson. Despite, Dr. McLin's participation in such a high-profile event demonstrates that, the university and Dr. Thompson entrusted her with a visible and honorable role, further calling into question the legitimacy and timing of the actions taken against her.

13.     Moreover, Dr. McLin had for years served as the President of JSU's Faculty Senate, an important component of JSU's concept of shared governance. In this role, she heard and addressed concerns from other faculty members and communicated recommendations to JSU's administration based on the Faculty Senate's self-determination.

14.     At times, Dr. McLin communicated decisions from the Faculty Senate that were unpopular or not well received – but that is the nature of her role, and that is a celebrated aspect of academia. Without academic freedom, universities—like JSU—cannot be laboratories for intellectual advancement.

15.     On one occasion, Dr. McLin—in her capacity as President of the Faculty Senate—communicated a vote of "no confidence" for Professor Brandi Newkirk-Turner ("Dr. Newkirk-

Turner"). This prompted Dr. Newkirk-Turner to seek revenge. Dr. Newkirk-Turner contacted members of Dr. McLin's family to complain about Dr. McLin and smear her reputation, and Dr. McLin notified JSU and Dr. Thompson of Dr. Newkirk-Turner's conduct.

16.    Dr. Newkirk-Turner had an especially close relationship with Dr. Thompson and with Dr. Alfred Rankins, Jr. (the chair of IHL). Only hours after Dr. Newkirk-Turner was removed from her post in July of 2023 following the vote of "no confidence," Dr. Rankins personally directed that she be reinstated.

17.    Emboldened by her relationship with Dr. Rankins, Dr. Newkirk-Turner then sought further retribution through Dr. Thompson.

18.    Because of his close personal and familial relationship with Dr. Newkirk-Turner, and because he was personally offended and embarrassed because of the Faculty Senate's criticism of JSU's Office of Academic Affairs two months after he assumed office, Dr. Thompson obliged.[1]

19.    Through JSU's Office of General Counsel, and under the leadership of Onetta Whitley, Dr. Thompson directed a sham investigation into Dr. McLin to find pretextual reasons to terminate her. The investigation was conducted, in whole or in part, by an outside attorney, Charles Winfield.

20.    The investigation revealed nothing of substance, and every reason Dr. Thompson later invoked to cause Dr. McLin's termination had occurred many months or years earlier – including conduct that occurred before Dr. Thompson became president of JSU.

---

[1] Dr. Thompson also had a personal vendetta against Dr. McLin because, years earlier, he and Dr. Newkirk-Turner co-taught a doctoral-level course while he was a doctoral student. This was a violation of accreditation standards and academic protocol because Dr. Turner did not yet have a doctoral degree. The Faculty Senate—including Dr. McLin—reviewed and criticized this arrangement as jeopardizing JSU's compliance with Southern Association of Colleges and Schools Commission on Colleges' ("SACSOC") accreditation standards.

21.    The "investigation" allegedly revealed Dr. McLin had turned her back in protest on Dr. Newkirk-Turner while she was speaking – an act plainly protected by the First Amendment. It otherwise revealed vague and contrived transgressions such as copying too many people on emails, complaining about inconsequential matters (like Halloween decorations), or voicing other concerns – all of which were lawful exercises of Dr. McLin's First Amendment rights and basic tenets of academic freedom. Dr. Thompson has never sought to terminate any other tenured professor for such trivial conduct (most of which is either contrived or constitutionally protected), which further underscores the personal nature of his vendetta against Dr. McLin.

22.    Dr. McLin was never counseled or warned about any of these things (most of which had occurred in 2023 or before). Dr. McLin never received any progressive discipline or corrective action about these things. Moreover, JSU never reported any of these alleged infractions to IHL in the form of a Post-Tenure Review, which JSU was required to submit to IHL annually on or before July 15. Dr. McLin did not receive an annual evaluation.

23.    In June 2024, Jackson State University (JSU) requested that Dr. Dawn Bishop McLin, in her capacity as Faculty Senate President, make a public statement to the media regarding the hiring of Provost, Dr. Denise Gregory. Prior to this, JSU President Dr. Thompson had personally reached out to Dr. McLin to seek her opinions on Dr. Gregory, further demonstrating the University's recognition of her leadership and insight on faculty matters.

24.    At that time, there were no indications that her credibility or role within JSU was in question. However, shortly thereafter, she faced retaliatory actions that directly contradict the University's prior reliance on her as a spokesperson and trusted advisor. This abrupt shift raises serious concerns about the true motives behind the adverse actions taken against her, reinforcing that they were not based on performance but on retaliation for her advocacy and leadership in the

Faculty Senate.

25.    To further underscore the contrived nature of Dr. Thompson's sham investigation, JSU renewed Dr. McLin's tenured faculty contract in July 2024 (just weeks before Dr. Thompson terminated her). That month, JSU also selected Dr. McLin to serve as a Title IX adjudicator, which confirms the confidence and trust JSU reposed in Dr. McLin.

26.    But on August 1, 2024—without any warning, prior counseling, or corrective action, and despite its renewal weeks earlier of Dr. McLin's employment contract—Dr. Thompson delivered to Dr. McLin a letter indicating he intended to terminate her employment. *See* Ltr. from Dr. Thompson to Dr. McLin (Aug. 1, 2024), attached as **Exhibit 1**.

27.    As alleged above and below, Dr. Thompson's "reasons" for Dr. McLin's termination were false, contrived, pretextual, and/or related to Dr. McLin's exercise of her constitutional rights.

28.    Effective immediately, Dr. Thompson removed Dr. McLin from her professorial and other leadership duties, reassigned her grants (for which she was paid), and essentially eradicated her from JSU.

29.    Dr. McLin timely requested a hearing, but JSU did not respond to Dr. McLin's hearing request until over six weeks had elapsed since Dr. Thompson delivered his termination letter. And when it did, JSU gave Dr. McLin only 10 days to prepare for a hearing on September 20, 2024 (and even then, Dr. McLin lacked access to her JSU email account and intranet resources, which impaired her ability to support her defense). JSU also gave Dr. McLin *only three days* to produce her witness and exhibit list. On the other hand, JSU *never produced* an exhibit or witness list to Dr. McLin.

30.    Due to the passing of a member of the Faculty Personnel Committee (FPC), the

hearing to review the validity of Dr. Thompson's termination of Dr. McLin was rescheduled to October 25, 2024. Recognized by the JSU Faculty Handbook, the FPC is elected by faculty peers and is responsible for upholding due process in faculty employment decisions. This is significant because the FPC's role is grounded in shared governance, aligning with AAUP standards, which emphasize that faculty should have primary responsibility in tenure and dismissal cases. The AAUP's Recommended Institutional Regulations on Academic Freedom and Tenure stress that faculty-led committees must oversee due process to protect academic freedom and prevent arbitrary or retaliatory dismissals.

31.     In advance of the hearing, Dr. McLin requested: (i) her employment contracts as a tenured professor; (ii) JSU's Post-Tenure Reviews of Dr. McLin; (iii) Dr. McLin's personnel file; and (iv) JSU's investigative file of Dr. McLin. She informed JSU this information was necessary and relevant to the preparation of her defense. JSU refused to provide any of the information.

32.     In advance of the hearing—as JSU had required her to do—Dr. McLin submitted her witness and exhibit list. She also responded to each of the allegations against her which were either impermissibly vague or involved constitutionally protected conduct. She also objected to the lack of procedural and substantive due process.

33.     Dr. Thompson's and JSU's illegal treatment of Dr. McLin, meanwhile, had drawn the attention of others outside of JSU's orbit. For example, on October 24, 2024, the Foundation for Individual Rights and Expression ("FIRE") sent a letter to Dr. Thompson.

34.     Among other things, FIRE expressed concern over "JSU's disciplinary charges against tenured professor and Faculty Senate President Dawn McLin for criticizing her colleagues and JSU. The First Amendment protects the expression of state university professors even when that expression is perceived as uncivil." *See* Ltr. from FIRE to M. Thompson (Oct. 24, 2024),

attached as **Exhibit 2**. FIRE expressed particular concern because JSU was punishing Dr. McLin because she "harshly criticized JSU employees, questioned university leadership, and frequently complained about JSU policies and practices." *Id.*

35.     Likewise, the American Association of University Professors ("AAUP") expressed concern over JSU's and Dr. Thompson's mistreatment of Dr. McLin. In the preceding months, AAUP has sent three letters to Dr. Thompson regarding his mistreatment of Dr. McLin. Most recently, on January 8, 2025, the AAUP informed Dr. Thompson that his termination of Dr. McLin plainly violated her right to academic freedom. The AAUP also informed Dr. Thompson that his refusal to reinstate Dr. McLin (as the FPC recommended, see infra) also violated her rights. The AAUP described Dr. Thompson's treatment of Dr. McLin—which has left her "in a state of professional limbo with no discernible prospect of being returned to her faculty duties and denied access to her $1.5 million dollar grant"—as "extremely disturbing." *See* Ltrs. from AAUP to M. Thompson, attached as **Composite Exhibit 3**.

36.     On October 25, 2024, the FPC held Dr. McLin's termination hearing (the "Hearing"). From the start, JSU and Dr. Thompson attempted to frustrate Dr. McLin's ability to prepare a defense. They forced her to disclose her witness list in advance, even though JSU never disclosed a witness list.

37.     They forced Dr. McLin to put her defensive case on first—essentially, forcing her to defend and rebut evidence that she could only guess might be used against her—and then it adjourned the Hearing for several days so it could prepare its case.

38.     They forbid Dr. McLin's lawyer from advocating or arguing on her behalf, questioning witnesses, or commenting on the law or evidence. In other words, although Dr. McLin's lawyer was permitted to be physically present at the Hearing, he was not permitted to

speak or participate.

39.     However, JSU and Dr. Thompson appeared through a lawyer, Charles Winfield. He was the *only* representative present for JSU and Dr. Thompson. He was identified as the Respondent for JSU, yet it was never disclosed who recommended the termination. Dr. McLin's Chairperson, Dean of the College, and the University Provost all stated they were unaware of any such recommendation. The FPC stated that, "failure to engage with the proper respondent raised questions about transparency and diminished the FPC's capacity to conduct a comprehensive evaluation of the matters giving rise to the termination recommendation."

40.     Mr. Winfield cross-examined Dr. McLin's witnesses, objected to evidence, and advocated on JSU's behalf. In other words, Mr. Winfield functioned as both JSU's and Dr. Thompson's trial lawyer and as their official representative (even though he is not an employee of JSU or IHL). This disparity in procedures shocks the conscience and patently deprived Dr. McLin of procedural due process.

41.     After Dr. McLin presented her evidence and witnesses and argued on her own behalf, the Hearing adjourned so JSU and Dr. Thompson could prepare the presentation of their offensive case against Dr. McLin.

42.     Days later, the Hearing reconvened. The night before the Hearing reconvened, JSU and Dr. Thompson announced they did not intend to call any witnesses. Instead, Mr. Winfield summarized the "case" Dr. Thompson had built against Dr. McLin.

43.     Mr. Winfield's summary of Dr. Thompson's case included accusations and allegations made by JSU employees who were not present. Thus, Dr. McLin could not cross-examine them or otherwise confront her accusers.

44.     This was, of course, Dr. Thompson's and JSU's design. They did not want Dr.

McLin to interview these "accusers" in advance and they did not want her to question them at the Hearing. And by this time, Dr. Thompson and JSU had effectively shuttered Dr. McLin out of JSU for many months.

45.     JSU and Dr. Thompson forced Dr. McLin to disclose her case in advance and put her case on first, without the aid of a lawyer. Then, JSU and Dr. Thompson—having had days to consider and analyze Dr. McLin's case—did not produce any witnesses against Dr. McLin and simply presented its case through the advocacy of its own lawyer.

46.     On November 20, 2024, the FPC published its findings and communicated these findings to Dr. Thompson. In relevant part, the FPC summarized Dr. McLin's case as follows:

(i)     JSU did not "provide substantive evidence to support such claims of malfeasance, inefficiency, contumacious conduct, and other cause."

(ii)     Dr. Thompson's "recommendation for termination runs afoul of any termination processes which include progressive disciplinary actions and is not aligned with [Dr. McLin's] performance records."

(iii)     Dr. Thompson's "arbitrary violation of substantive and procedural due process is a pattern which has impacted other faculty at JSU."

(iv)     Dr. Thompson's termination of Dr. McLin was an "arbitrary deprivation of [Dr. McLin's] 20-year academic career...."

(v)     Dr. Thompson's "recommendation for termination is retaliatory in nature, ultimately promoted by [Dr. Newkirk-Turner], and moved along by a 'fact finding mission' initiated by IHL."

(vi)     "Had JSU's motivations for terminating Dr. McLin's employment been pure, it would not have renewed her contract, it would not have requested she serve as a Title IX

adjudicator mere weeks before attempting to terminate her, and she would not have been personally sought out by the President to carry out tasks."

47.    The FPC determined Dr. McLin "met her contention"—*i.e.*, she proved the theories illustrated above. *See id.* The FPC also noted that Mr. Winfield—who at the eleventh hour informed the FPC that he would call no witnesses at the Hearing—conducted the pre-Hearing investigation into Dr. McLin "at the behest of IHL." *See id.*

48.    The FPC noted correctly that JSU and Dr. Thompson "ultimately [bore] the burden of demonstrating valid grounds" for terminating Dr. McLin, and it determined they had not met that burden. *See id.*

49.    The FPC recommended "that the termination process conclude and that Dr. McLin should be immediately reinstated as a full professor, with her suspension rescinded and her rights as a tenured faculty member fully restored" and "that Dr. McLin's due process rights be fully upheld as requested." *See id.*

50.    Despite having had the FPC's report for more than 120 days, neither Dr. Thompson nor JSU have acted on it – despite Dr. McLin's and the AAUP's inquiries and requests that they do. Again, this is by design. By intentionally failing to act on the FPC's report—under which there can be only one outcome, "immediate reinstatement"—Dr. Thompson and JSU have left Dr. McLin in an unconscionable state of professional limbo.

51.    Their intentional delay prevents Dr. McLin's reinstatement and continued oversight of her research grants while, at the same time, rendering it impossible for Dr. McLin to pursue alternative employment in academia. Dr. Thompson and JSU, by failing to act within a reasonable time (as their own policies require), are trying to force Dr. McLin to simply resign.

52.    Dr. Thompson's and JSU's deliberate inaction, which follows their and IHL's

pretextual and illegal termination of Dr. McLin, is further evidence of their willingness to violate Dr. McLin's constitutional rights, breach (or cause the breach of) her employment contract, and otherwise cause her economic and reputational harm.

## COUNT I:  Breach of Contract
### (JSU and IHL)

53.    Dr. McLin incorporates the allegations set forth in previous paragraphs as if fully set forth herein.

54.    Dr. McLin had a contract as "Professor Tenured in the Department of Psychology, College of Liberal Arts at [JSU]." JSU and IHL were both parties to the contract, which expressly stated the "Employment Contract" binds "The Mississippi Board of Trustees of State Institutions of Higher Learning…[and] Jackson State University."

55.    The contract provided—just as the IHL By-laws mandate—that Dr. McLin could be terminated only for financial exigencies, reductions in programs or units, malfeasance, inefficiency or contumacious conduct, or other cause. In other words, JSU and IHL could not and cannot terminate Dr. McLin for political reasons, for convenience, or for any other reason not expressly stated in IHL's By-laws or in Mississippi statutes.

56.    JSU and/or IHL breached the contract by terminating Dr. McLin without valid reasons. As a corollary, JSU and/or IHL also caused the reassignment of Dr. McLin's research grants, which deprived her of other income to which she was entitled.

57.    JSU's and/or IHL's breach of Dr. McLin's contract proximately caused her damages, including: foreseeable injury to her professional reputation in academia, the loss of research grant monies, and related economic injury to be proven at trial.

**COUNT II:  Violation of Constitutional Rights, 42 U.S.C. §1983 (Procedural Due Process)**
**(JSU, IHL, and Marcus Thompson)**

58.      Dr. McLin incorporates the allegations set forth in previous paragraphs as if fully set forth herein.

59.      "The protections of the Due Process Clause, whether procedural or substantive,…apply to deprivations of constitutionally protected property…interests." *Klingler v. Univ. S. Miss.*, 612 F. App'x 222, 227 (5th Cir. 2015). Tenured faculty have a constitutionally protected property interest in their continued employment. *Suddith v. Univ. S. Miss.*, 977 So. 2d 1158, 1170 (Miss. Ct. App. 2007) (collecting cases); *see also Jones v. La. Bd. Supervisors of Univ. of La. Sys.*, 809 F.3d 231, 237 (5th Cir. 2015).

60.      "Where a tenured public university faculty member is terminated, due process requires both notice and an opportunity to be heard." *Jones v. La. Bd. Supervisors of Univ. of La. Sys.*, 809 F.3d 231, 236 (5th Cir. 2015). "The type of hearing necessary—the process due—is a function of the context of the individual case." *Id.* "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and quotation omitted).

61.      JSU and Dr. Thompson violated Dr. McLin's constitutional right to procedural due process in several ways.

62.      First, they prohibited her from having her attorney advocate on her behalf or otherwise participate during the Hearing. On the other hand, JSU and Dr. Thompson prosecuted its case exclusively through an attorney, Mr. Winfield, who was not an employee of JSU. In other words, JSU and Dr. Thompson enjoyed the right to use an attorney while, at the same time, denying Dr. McLin that basic right.

63.    Second, after the FPC returned its decision and recommended Dr. McLin's immediate reinstatement, neither JSU nor Dr. Thompson acted on that recommendation – even after Dr. McLin and the AAUP requested they act. Instead, JSU and Dr. Thompson—for nearly two months after the FPC's recommendation—have taken no action, leaving Dr. McLin with no recourse and depriving her of her professorship and research grants.

64.    Third, JSU and Dr. Thompson violated their own policies (including policies approved and disseminated by Dr. Thompson himself) in terminating Dr. McLin and in the method in which they terminated her. They violated their policies in the following ways:

(i) The policy states "[w]hen an employee is suspended or placed on leave pending the results of an investigation, the investigation must move forward as quickly as is practically possible under the circumstances." However, JSU and Dr. Thompson have intentionally delayed and caused Dr. McLin to languish since Dr. Thompson first announced his intention to recommend her termination in early August 2024.

(ii) The policy specifically contemplates progressive discipline to avoid termination. However, Dr. McLin never received any form of progressive discipline, counseling, warning, or any other form of corrective action. To the contrary, JSU renewed Dr. McLin's tenured employment just weeks before Dr. Thompson's notice of termination (which relied on alleged infractions that occurred many months and years prior to Dr. McLin's renewed employment).

65.    Fourth, despite forcing Dr. McLin to disclose her witnesses in advance of the Hearing, JSU and Dr. Thompson refused to disclose theirs. In fact, JSU and Dr. Thompson forced Dr. McLin to present her defensive case without knowing what evidence or witnesses JSU would rely on to support Dr. Thompson's recommendation to terminate her. After Dr. McLin presented her case, JSU and Dr. Thompson *did not produce any witnesses*. They instead prosecuted their

case only through summary argument of a lawyer, Mr. Winfield, who was not employed by JSU or IHL. This confirms the Hearing was a complete sham.

66.    As admitted by Mr. Winfield at the Hearing, and as the FPC found, this campaign to eradicate Dr. McLin was done "at the behest of IHL." Thus, IHL directed, caused, and ratified these violations of Dr. McLin's constitutional rights.

67.    The violations of Dr. McLin's constitutional right to procedural due process have proximately caused her injuries and damages.

## COUNT III:  Violation of Constitutional Rights, 42 U.S.C. §1983 (Substantive Due Process) (JSU & Marcus Thompson)

68.    Dr. McLin incorporates the allegations set forth in previous paragraphs as if fully set forth herein.

69.    "The protections of the Due Process Clause, whether procedural or substantive,…apply to deprivations of constitutionally protected property…interests." *Klingler v. Univ. S. Miss.,* 612 F. App'x 222, 227 (5th Cir. 2015). Tenured faculty have a constitutionally protected property interest in their continued employment. *Suddith v. Univ. S. Miss.,* 977 So. 2d 1158, 1170 (Miss. Ct. App. 2007) (collecting cases); *see also Jones v. La. Bd. Supervisors of Univ. of La. Sys.,* 809 F.3d 231, 237 (5th Cir. 2015).

70.    "Public officials violate substantive due process rights if they act arbitrarily or capriciously." *Edionwe v. Bailey,* 860 F.3d 287, 293 (5th Cir. 2017).

71.    JSU and Dr. Thompson acted arbitrarily and capriciously in terminating Dr. McLin's tenured professorship and her research grants.

72.    Some of Dr. Thompson's professed reasons for the termination includes conduct that is plainly protected under the First Amendment (*i.e.,* turning her back in protest of a speaker). The remaining reasons were vague, contrived, and unsubstantiated – just as the FPC determined.

Stated another way, JSU and Dr. Thompson did not (and could not) prove any violation, infraction, or other conduct that justified (or even arguably supported) Dr. McLin's termination.

73.     Dr. McLin's termination was carried out for "political reasons," which is arbitrary and capricious and which is expressly prohibited by IHL By-law 301.04(C).

74.     As admitted by Mr. Winfield at the Hearing, and as the FPC found, this campaign to eradicate Dr. McLin was done "at the behest of IHL." Thus, IHL directed, caused, and ratified these violations of Dr. McLin's constitutional rights.

75.     The violations of Dr. McLin's constitutional right to substantive due process have proximately caused her injuries and damages.

## COUNT IV: Tortious Interference with Contract
### (Marcus Thompson)

76.     Dr. McLin incorporates the allegations set forth in previous paragraphs as if fully set forth herein.

77.     Dr. Thompson was aware of the contract between Dr. McLin and JSU and IHL.

78.     Dr. Thompson intentionally caused JSU and IHL to breach that contract by terminating Dr. McLin's employment or otherwise interfering with Dr. McLin's rights under that contract. Because Dr. Thompson's willful and malicious conduct was personally vindictive, he operated outside the course and scope of his employment and is not entitled to MTCA immunity.

79.     Dr. Thompson interfered with Dr. McLin's contract by, *inter alia*, causing her termination for political and/or personal reasons; causing the violations of her right to constitutional due process; and removing and reassigning her research grants.

80.     Dr. Thompson's interference with Dr. McLin's contract was malicious, willful, and designed to cause her foreseeable harm, including harm to her professional reputation in academia.

81.    Dr. Thompson's interference with Dr. McLin's contract was the proximate cause of her injuries and damages.

## COUNT V: Tortious Interference with Business Expectancies
### (Marcus Thompson)

82.    Dr. McLin incorporates the allegations set forth in previous paragraphs as if fully set forth herein.

83.    Dr. Thompson knew Dr. McLin had secured numerous research grants from the National Sciences Foundation, National Academies of Sciences, and United States Department of Homeland Security. Dr. Thompson knew Dr. McLin administered those grants and was compensated for the administration of those grants.

84.    Dr. Thompson caused Dr. McLin's grants to be reassigned elsewhere at JSU, which deprived Dr. McLin of income associated with those grants. In addition, that reassignment foreseeably and predictably had the collateral effect of preventing Dr. McLin from obtaining other grants.

85.    Dr. Thompson's interference with Dr. McLin's grants—*i.e.*, her business expectancies—was willful, malicious, and designed to cause her foreseeable harm, including harm to her professional standing with agencies and entities responsible for awarding grants to professors in academia. Because Dr. Thompson's willful and malicious conduct was personally vindictive, he operated outside the course and scope of his employment and is not entitled to MTCA immunity.

86.    Dr. Thompson's interference with Dr. McLin's business expectancies was the proximate cause of her injuries and damages.

## COUNT VI:  Intentional Infliction of Emotional Distress and Reputational Harms
### (Marcus Thompson)

87.     Dr. McLin incorporates the allegations set forth in previous paragraphs as if fully set forth herein.

88.     Dr. Thompson's conduct toward Dr. McLin was willful, malicious, and designed to inflict maximum personal and professional injury.

89.     Dr. Thompson's conduct is utterly intolerable in any civilized society—particularly in academia, where tenured professors should not be targeted for personal or political reasons.

90.     Dr. Thompson's conduct was intended to cause, and it did cause, Dr. McLin to suffer severe emotional distress associated with the loss of her tenured professorship, the loss of her research grants, and the permanent damage to her reputation in academia. Because Dr. Thompson's willful and malicious conduct was personally vindictive, he operated outside the course and scope of his employment and is not entitled to MTCA immunity. Moreover, Dr. Thompson's willful and malicious refusal to follow—much less act on—the FPC's recommendation for immediate reinstatement has not only left Dr. McLin in professional limbo, but it has caused and is causing to continue to cause her to suffer reputational harms. Dr. Thompson and JSU have defamed Dr. McLin through the allegations in Dr. Thompson's notice of an intent to terminate Dr. McLin, particularly since the FPC found those allegations were not substantiated. Thus, the failure to follow—much less act on—the FPC's recommendation is tantamount to continued defamatory conduct that unfairly and unjustifiably impugns Dr. McLin's reputation in academia and in her community.

91.     Dr. Thompson has caused Dr. McLin to suffer anxiety, worry, sleeplessness, and other symptoms associated with his intentional and malicious conduct.

**COUNT VII:  Request for Temporary Restraining Order/Emergency Injunctive Relief**

92.      Dr. McLin incorporates the foregoing allegations as if fully set forth herein.

93.      Defendants' actions have caused, and will continue to cause, immediate and irreparable harm. Early Registration for JSU's Summer 2025 and Fall 2025 classes begins on March 24, 2025. If Dr. McLin is not granted the requested relief, she cannot be assigned any classes to teach at JSU for the summer and fall semesters.

94.      Further, Dr. McLin's Ph.D. students have been forced to seek other dissertation committee members, impacting the mentorship they sought by selecting Dr. McLin as a dissertation mentor.

95.      Finally, Dr. McLin is not able to administer grants obtained before her wrongful termination.

96.      Dr. McLin does not have an adequate remedy at law to redress the conduct alleged in this TRO Complaint. This is a time-sensitive matter, as Early Registration begins on March 24, 2025. Moreover, monetary damages alone will not be sufficient because a monetary award does not allow Dr. McLin to teach the classes from which she is suspended or administer grants she obtained before her wrongful termination.

97.      Further, Defendants' wrongful termination and refusal to reinstate Dr. McLin is interfering with her privileges of tenured professorship—the very bedrock of academia—and which is also a constitutionally protected interest. The letters issued by FIRE and AAUP, as described above, support this requested relief. Defendants' actions are violating Dr. McLin's constitutional rights; and thus, their actions should be stopped immediately.

98.      Dr. McLin is likely to succeed on the ultimate merits of her case. The FPC clearly and unequivocally recommended "that the termination process conclude and that Dr. McLin

should be immediately reinstated as a full professor, with her suspension rescinded and her rights as a tenured faculty member fully restored" and "that Dr. McLin's due process rights be fully upheld as requested." Defendants have flatly refused to comply with the FPC's directive. Defendants' intentional refusal to reinstate Dr. McLin is keeping her in a professional state of "limbo" – Defendants effectively fired Dr. McLin, but JSU's position is that Dr. McLin is on "administrative leave," which prevents her from searching for alternative employment. Should be Dr. McLin.

99.    Dr. Thompson's charges against Dr. McLin were a sham. Dr. McLin's alleged offending conduct occurred in 2021, 2022, and 2023. Yet, in July 2024, JSU renewed Dr. McLin's tenured faculty contract and selected Dr. McLin to serve as a Title IX adjudicator. Then, on August 1, 2024—without any warning, prior counseling, or corrective action—Dr. Thompson terminated Dr. McLin. Thus, Dr. Thompson had false, contrived, and/or pretextual "reasons" for Dr. McLin's termination.

100.    JSU's procedure was also a sham. At the hearing, JSU advocated through an attorney who was allowed to cross-examine witnesses, while Dr. McLin's counsel was not allowed to speak or conduct cross-examination. Dr. McLin was forced to put on her case first, with minimal notice—essentially a "pre-buttal" of anticipated allegations against her, while JSU had the benefit of weeks of preparation.

101.    Jackson State University (JSU) did not call a single witness or produce any exhibits or a witness list for Dr. Dawn McLin prior to her hearing. During the hearing, on October 25, 2024, Mr. Charles Winfield identified seven potential witnesses to bring before the Faculty Personnel Committee (FPC). On October 28, 2024, he informed the FPC that JSU would not call any of them. This list included Dr. Brandi Newkirk-Turner and other individuals, some of whom had either

been terminated or retired from JSU at the time of the hearing.

102.    JSU's decision to withhold testimony from these key individuals is significant. These witnesses were central to the allegations against Dr. McLin, yet the University chose not to present their testimony, raising serious questions about the credibility of its claims. If these individuals had relevant information to support JSU's case, their testimony would have been critical. Their absence suggests a deliberate effort to avoid scrutiny and obscure the lack of substantive evidence. By refusing to present these witnesses, JSU denied Dr. McLin the opportunity to confront and cross-examine those directly tied to the allegations against her, undermining fundamental principles of due process and fairness.

103.    This decision further reinforces that the actions taken against Dr. McLin were not based on substantiated misconduct but rather on retaliation.

104.    Next, the threatened injury to Dr. McLin if a TRO is not granted outweighs any threatened harm to Defendants. Dr. McLin was a full tenured professor before her wrongful termination. Reinstating her to full professorship, by granting Dr. McLin's requested TRO, would not damage Defendants.

105.    Finally, granting the TRO will not disserve the public interest. To the contrary, the public will be harmed if Defendants are allowed to continue suspending Dr. McLin and continue their refusal to reinstate her to full tenured professorship. The public has an interest in not permitting state actors from committing constitutional violations. Moreover, granting the TRO would merely effectuate what the FPC unanimously said must happen "immediately." In addition, granting the TRO will not disserve the public interest; rather, it will uphold the principles of academic freedom and shared governance, which are essential to the integrity of higher education. Tenure protections exist to prevent retaliation against faculty, ensuring that universities remain

spaces for open dialogue and critical inquiry. As the FPC report noted, Dr. McLin's termination "may be a signal to all faculty that voicing concerns and criticisms may result in abrupt dismissal – in an academic environment where shared governance is paramount to the success of the University." Furthermore, "Dr. McLin's witnesses and evidence suggest that the recommended termination of Dr. McLin could damage the university's reputation for academic freedom and shared governance." Protecting these fundamental principles serves both the university community and the broader public interest.

106.    Dr. McLin respectfully requests this Court waive any requirement to post bond under Mississippi Rule of Civil Procedure 65(c). Dr. McLin seeks reinstatement through her request for injunctive relief, and the economic consequences of this relief, if any, will be slight.

### COUNT VIII:  Request for Preliminary and Permanent Injunction

107.    Dr. McLin incorporates the foregoing allegations as if fully set forth herein.

108.    Within 14 days of the TRO (or such later date if the TRO is extended), Dr. McLin requests a hearing and that subsequently a preliminary and/or permanent injunction be entered that prohibits Defendant from continuing their refusal to reinstate Dr. McLin to full tenured professorship and their refusal to rescind her suspension. Dr. McLin further requests the injunction remain in place until this matter is fully and finally resolved on the merits.

### DAMAGES

109.    Dr. McLin incorporates the foregoing allegations as if fully set forth herein.

110.    As a direct and proximate result of the actions of the defendants, as described herein and to be established at trial, Dr. McLin has been damaged and is entitled to relief as follows:

(a)    Temporary, preliminary, and permanent injunctive relief;

(b)    Actual damages in an amount to be determined by a jury, including for the loss of

salary, loss of research grants, and related economic injuries;

    (c)      Loss of goodwill and reputation in an amount to be determined by a jury;

    (d)      Consequential financial damages in an amount to be determined by a jury because of Dr. McLin's inability to compete for other employment and the loss of her research grants or grants that might have been awarded;

    (e)      Damages in an amount to be determined by a jury to compensate for emotional and mental distress associated with the untoward behavior and injuries inflicted;

    (f)      Other incidental and consequential damages;

    (g)      Prejudgment and post-judgment interest;

    (h)      Punitive damages, attorney's fees and case expenses, including costs of filing suit;

    (i)      Such further general or specific relief to which Dr. McLin is entitled at law or in equity; and

    (j)      Any additional relief and damages permitted by law and/or deemed just and proper by this Court.

## JURY DEMAND

111.    Dr. McLin demands a jury trial for any issue so triable.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Dawn Bishop McLin, Ph.D., respectfully requests that this Court grant her relief, as follows:

    (a)      Immediately enter a temporary restraining order enjoining Defendants from continuing to refuse to reinstate Dr. McLin's full tenured professorship at JSU;

    (b)      Enter an order permanently enjoining Defendants from continuing to refuse to reinstate Dr. McLin's full tenured professorship at JSU;

(c)  Enter judgment in Dr. McLin's favor on all counts and award all other relief to which she may be entitled; and

(d)  Award Dr. McLin any other legal or equitable relief to which she may be entitled.

Dated: March 19, 2025

Respectfully submitted,

**DAWN BISHOP MCLIN, PH.D.**

By:  */s/ Chadwick M. Welch*
Chadwick M. Welch (MSB No. 105588)

*Her attorney*

OF COUNSEL:

Heidelberg Patterson Welch Wright
368 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel. 601.790.1588
Fax 601.707.3075
cwelch@hpwlawgroup.com

## **VERIFICATION**

STATE OF MISSISSIPPI

COUNTY OF MADISON

Personally appeared before me, the undersigned authority in and for the jurisdiction aforesaid, DAWN BISHOP MCLIN, Ph.D., who on oath states that the matters and things set forth in the foregoing TRO Complaint are true and correct as therein stated to the best of her knowledge, information, and belief based upon information currently available to her.


_____
DAWN BISHOP MCLIN, Ph.D.


Sworn to and subscribed before me, this the 18th ____ day of March, 2025.

My Commission Expires:

_____

_____
NOTARY PUBLIC

26

## CERTIFCATE OF COUNSEL

I, Chadwick M. Welch, attorney for Plaintiff Dawn Bishop McLin, Ph.D., do hereby certify that I have made reasonable efforts to provide notice of the Request for Temporary Restraining Order to Defendants, through their counsel. However, the relief sought is urgent and exigent circumstances justify a hearing under MRCP 65(a) irrespective of notice.

SO CERTIFIED, this the 19th day of March, 2025.

By:    */s/ Chadwick M. Welch*
Chadwick M. Welch (MSB No. 105588)



**JACKSON STATE UNIVERSITY**
JACKSON, MISSISSIPPI 39217

OFFICE OF
THE PRESIDENT

(601) 979-2323
Fax: (601) 979-2948

August 1, 2024

Dr. Dawn McLin
103 Firefly Cove
Madison, MS 39110

### NOTICE OF INTENT TO TERMINATE

Dr. McLin:

Pursuant to the Jackson State University Faculty Handbook and IHL Board Policy 403.01, you are hereby notified that I intend to recommend that you be terminated from your position as a tenured faculty member at Jackson State University. As of today, you are relieved of all work duties, research assignments, and service functions at JSU, and you will be placed on administrative leave with pay during the pendency of this process. Your roles and responsibilities in connection with grants you are administering will be re-assigned.

You have the right to request a hearing. The Faculty Handbook explains what you should do if you would like to exercise this right to have a hearing.

The for-cause reasons for my recommendation include, but are not limited to, the following:

- Malfeasance, inefficiency or contumacious conduct;

- For other cause.

Should you request a hearing, this letter will be supplemented to provide a more detailed explanation of the particular actions, conduct, and other cause that forms the basis of my recommendation. Generally speaking, and without limitation, however, the pervasive, repetitive, and ongoing pattern of behavior that has led to my decision includes hostile conduct, bullying, harassment, and intimidation of fellow JSU employees (including those over whom you have no supervisory responsibilities), interference in the re-accreditation process, abuse of your position

**EXHIBIT 1**

Dr. Dawn McLin
August 1, 2024
Page 2

as president of the Faculty Senate, and interference in departmental business operations. As just one example, we have been informed that, during one presentation by a faculty member, you turned your chair in a show of disrespect to them. This conduct, which was witnessed by numerous JSU employees, reflects poorly on our institution and undermines our goal of collegiality and teamwork.

The conduct at issue has led to filing of numerous grievances and complaints filed with the university's Equal Employment Opportunity office and others at JSU, the subjects of which not only contribute to an unacceptable working environment for some members of our campus community but also threaten to expose the university to liability.

I emphasize that these are simply a sample of the many forms of pervasive and ongoing conduct that have led to my decision.

Respectfully,

Marcus L. Thompson

Marcus L. Thompson, PhD
President



**FIRE**
Foundation for Individual
Rights and Expression

October 24, 2024

Marcus L. Thompson
Office of the President
Jackson State University
1400 John R. Lynch Street, Administration Tower
Jackson, Mississippi 39217-0280

*Sent via U.S. Mail and Electronic Mail (president@jsums.edu)*

Dear President Thompson:

FIRE, a nonpartisan nonprofit dedicated to defending freedom of speech,[1] appreciates that Jackson State University is one of the few institutions in the country whose policies earn our "green light" rating. We are, however, concerned by JSU's disciplinary charges against tenured professor and Faculty Senate President Dawn McLin for criticizing her colleagues and JSU. The First Amendment protects the expression of state university professors even when that expression is perceived as uncivil.[2] To the extent JSU's disciplinary actions rest on McLin's protected expression, the university must refrain from punishing her.

In a September 12 disciplinary notice, JSU alleged McLin engaged in "hostile conduct, bullying, harassment, and intimidation of fellow JSU employees ... interference in the re-accreditation process, abuse of her position as president of the Faculty Senate, and interference in departmental business operations."[3] JSU claims McLin harshly criticized JSU employees,

---

[1] For more than 20 years, the Foundation for Individual Rights and Expression has defended freedom of expression, conscience, and religion, and other individual rights on America's university campuses. You can learn more about our mission and activities at thefire.org.

[2] *Healy v. James*, 408 U.S. 169, 180 (1972) ("[T]he precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, 'the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.'") (internal citation omitted).

[3] Disciplinary Letter from Jackson State Univ. Faculty Personnel Comm. to Dawn McLin, professor (Sept. 12, 2024) (on file with author). The recitation here reflects our understanding of the pertinent facts. We appreciate that you may have additional information to offer and invite you to share it with us. To this end, please find enclosed an executed privacy waiver authorizing you to share information about this matter.

510 Walnut Street, Suite 900 Philadelphia, PA 19106
Phone: 215-717-3473 Fax: 215-717-3440
thefire.org

**EXHIBIT 2**

Case 3:25-cv-00193-HTW-ASH    Document 3    Filed 03/20/25    Page 33 of 57
Case: 25CI1:25-cv-00224-EFP    Document #: 2    Filed: 03/19/2025    Page 31 of 38

2

questioned university leadership, and frequently complained about JSU policies and practices.[4] Her termination hearing is scheduled for October 25.

The First Amendment protects disrespectful and uncivil faculty speech—particularly on a university campus where the need for free and unfettered discussion is at its zenith.[5] Professors' right to voice their opinions extends to speech involving political and social issues as well as criticism of their universities and colleagues.[6] For example, JSU faulted McLin for turning her back to another professor during a university seminar, yet this silent, nondisruptive expression of disagreement remains well within her free speech rights.[7] The First Amendment guarantees these rights because authority figures "cannot make principled decisions" about what speech is "offensive" and therefore warrants punishment.[8]

While JSU has interests in addressing unprotected true threats,[9] discriminatory harassment,[10] and substantially disruptive conduct,[11] the breathing room afforded by free speech means that faculty and administrators "may have to withstand colleagues that do not like them, are rude, and may be generally disagreeable people."[12] JSU may not punish faculty over the "ordinary tribulations" of a workplace, "such as sporadic use of abusive language" that fails to rise to severe misconduct.[13] Even if JSU could show that McLin's speech "upset [administrators] and

---

[4] Id.

[5] E.g., Levin v. Harleston, 966 F.2d 85, 89 (2d Cir. 1992) (a public university violated the First Amendment when it launched an investigation into a faculty member's offensive writings on race and intelligence, which administrators stated "ha[d] no place at [the college]" and constituted "conduct unbecoming of a member of the faculty."); see also Coll. Republicans at S.F. State Univ. v. Reed, 523 F. Supp.2d 1005, 1018–20 (N.D. Cal. 2007) (striking down civility requirement because it bans "the kind of communication that it is necessary to use to convey the full emotional power with which a speaker embraces her ideas or the intensity and richness of the feelings that attach her to her cause").

[6] Faculty retain the right to speak as private citizens on matters of public concern, such as campus issues. E.g., Pickering v. Bd. of Educ., 391 U.S. 563, 576–78 (1968) (a teacher spoke as a private citizen when writing a letter to a local newspaper criticizing his employer, despite explaining that he teaches at the high school).

[7] Disciplinary Letter, supra note 3, at 15. JSU claimed this act was "as an overt, public sign of disrespect."

[8] Cohen v. California, 403 U.S. 15, 25 (1971).

[9] Virginia v. Black, 538 U.S. 343, 359 (2003) (a "true threat" is a statement through which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals"). McLin did not communicate a serious intent to commit violence.

[10] Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 651 (1999) (defining discriminatory harassment as conduct that is unwelcome, discriminates on the basis of a protected class like race or sex, and is "so severe, pervasive, and objectively offensive" that it "deprive[s] the victim[] of access to the educational opportunities or benefits provided by the school"). McLin did not discriminate against individuals based on a protected class.

[11] Tinker v. Des Moines, 393 U.S. 503, 512 (1969). While in university contexts, the protections Tinker established set the floor for expressive rights—not the ceiling, even under Tinker's disruption standard, McLin's words did not cause "material and substantial interference" with JSU operations.

[12] Somoza v. University of Denver, 513 F.3d 1206, 1218 (10th Cir. 2008); see also Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005) ("rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim").

[13] Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks omitted).

3

members of the community," "cast the [university] in a negative public light,"[14] caused "serious discipline problems, undermined employee morale," and "impaired harmony among co-workers," the First Amendment's robust protection for uncivil expression precludes university punishment.[15] Allowing faculty to resolve their own disputes is far better an alternative than chilling speech by taking the drastic step of terminating a tenured professor.

To achieve JSU's mission of creating "global leaders who think critically and can address societal problems and compete effectively,"[16] we hope you agree that faculty must be able to speak their minds, even if they risk offending those in power. FIRE submits this letter as evidence in McLin's disciplinary hearing and requests a substantive response to this letter no later than close of business on November 7, 2024, confirming JSU refrained from punishing her for expression protected by the First Amendment.

Sincerely,

Zachary Greenberg
Faculty Legal Defense Counsel, Campus Rights Advocacy

Cc:    Denise J. Gregory, Provost & Vice President
       Onetta S. Whitley, General Counsel

Encl.

---

[14] *Salge v. Edna Ind. Sch. Dist.*, 411 F.3d 178, 195 (5th Cir. 2005).

[15] *Kostić v. Tex. A&M Univ. at Commerce*, 11 F. Supp. 3d 699, 720 (N.D. Tex. 2014); *see also Hulen v. Yates*, 322 F.3d 1229, 1239 (10th Cir. 2003) ("[C]onflict is not unknown in the university setting given the inherent autonomy of tenured professors and the academic freedom they enjoy."); *Grimes v. E. Ill. Univ.*, 710 F.2d 386, 388 (7th Cir. 1983) ("The purpose of tenure is to protect academic freedom—the freedom to teach and write without fear of retribution for expressing heterodox ideas—and it is faculty who engage in teaching and writing.").

[16] *Our Mission*, JACKSON STATE UNIV., https://www.jsums.edu/about-jsu [https://perma.cc/D2TB-E8JT].

## Authorization and Waiver for Release of Personal Information

I, _____ Dawn McLin _____, do hereby authorize

_____ Jackson State University _____ (the "Institution") to release to the Foundation for Individual Rights and Expression ("FIRE") any and all information concerning my employment, status, or relationship with the Institution. This authorization and waiver extends to the release of any personnel files, investigative records, disciplinary history, or other records that would otherwise be protected by privacy rights of any source, including those arising from contract, statute, or regulation. I also authorize the Institution to engage FIRE and its staff members in a full discussion of all information pertaining to my employment and performance, and, in so doing, to disclose to FIRE all relevant information and documentation.

This authorization and waiver does not extend to or authorize the release of any information or records to any entity or person other than the Foundation for Individual Rights and Expression, and I understand that I may withdraw this authorization in writing at any time. I further understand that my execution of this waiver and release does not, on its own or in connection with any other communications or activity, serve to establish an attorney-client relationship with FIRE.

If the Institution is located in the State of California, I request access to and a copy of all documents defined as my "personnel records" under Cal. Ed. Code § 87031 or Cal. Lab. Code § 1198.5, including without limitation: (1) a complete copy of any files kept in my name in any and all Institution or District offices; (2) any emails, notes, memoranda, video, audio, or other material maintained by any school employee in which I am personally identifiable; and (3) any and all phone, medical or other records in which I am personally identifiable.

This authorization and waiver does not extend to or authorize the release of any information or records to any entity or person other than the Foundation for Individual Rights and Expression, and I understand that I may withdraw this authorization in writing at any time. I further understand that my execution of this waiver and release does not, on its own or in connection with any other communications or activity, serve to establish an attorney-client relationship with FIRE.

I also hereby consent that FIRE may disclose information obtained as a result of this authorization and waiver, but only the information that I authorize.

Signed by:
*Dawn McLin*
C65C793A65B594A9
_____                    10/24/2024
Signature                                           _____
                                                    Date



555 New Jersey Ave., NW, Suite 600, Washington, DC 20001
**PHONE: 202.737.5900 • www.aaup.org**

AMERICAN ASSOCIATION OF
UNIVERSITY PROFESSORS

<u>VIA ELECTRONIC MAIL</u>

August 12, 2024

Dr. Marcus L. Thompson
President
Jackson State University
Jackson, Mississippi

Dear President Thompson:

Dr. Dawn McLin, a tenured professor in the Department of Psychology and chair of the
faculty senate at Jackson State University, has sought the advice and assistance of the
American Association of University Professors as a result of an August 1 letter from you
notifying her of her suspension from her teaching duties pending the outcome of
dismissal proceedings. According to your letter, the dismissal action is based on a
"pervasive, repetitive, and ongoing pattern of behavior," which includes "hostile conduct,
bullying, harassment, and intimidation of fellow JSU employees . . . interference in the
re-accreditation process, abuse of [her] position as president of the Faculty Senate, and
interference in departmental operations"—grounds that she sharply disputes.

Our interest in the case of Professor McLin arises from our Association's longstanding
commitment to basic tenets of academic freedom, tenure, and due process as enunciated
in the enclosed 1940 *Statement of Principles on Academic Freedom and Tenure*, which
was jointly formulated by the AAUP and the American Association of Colleges and
Universities and has gained the endorsement of more than 280 scholarly societies and
other higher-education organizations. Procedural standards derived from the 1940
*Statement* are set forth in the AAUP's *Recommended Institutional Regulations on
Academic Freedom and Tenure* (also enclosed). We have noted the relevant provisions of
the Jackson State University faculty handbook and the Mississippi Board of Trustees of
State Institutions of Higher Learning (IHL) policies and bylaws.

Regulation 5, "Dismissal Procedures," of the *Recommended Institutional Regulations*
details standards of due process designed to protect academic freedom and tenure. Under
Regulation 5c(1), an administration may suspend a faculty member pending a dismissal
hearing under only two conditions: (1) when "immediate harm" (which the AAUP has
consistently viewed as physical in nature) to the faculty member or others "is threatened
by continuance" and (2) after the administration consults with an appropriate faculty
body regarding "the propriety, the length, and the other conditions of the suspension."

We have seen no indications that Professor McLin's continuance constitutes a threat to
the safety of herself or others. Nor are we aware that this suspension was imposed
following consultation with a duly constituted faculty body. We would therefore be
compelled to regard the suspension as illegitimately imposed.

**EXHIBIT 3**

President Thompson
August 12, 2024
Page 2

In addition to our concerns about the apparent absence of academic due process, we have concerns about the stated basis for seeking Professor McLin's dismissal. The 1940 *Statement* refers to faculty academic freedom in the faculty's capacity as "officers" of the educational institution. In this regard, our attached report *Protecting an Independent Faculty Voice: Academic Freedom after Garcetti v. Ceballos*, further provides that "the very same expertise and institutional commitment that legitimizes the faculty's role in institutional government legitimizes its right to criticize institutional policies and actions even when that speech is not uttered in a governing forum." Consequently, according to our statement *On the Relationship of Faculty Governance to Academic Freedom* (also attached),

> Protecting academic freedom on campus requires ensuring that a particular instance of faculty speech will be subject to discipline only where that speech violates some central principle of academic morality, as, for example, where it is found to be fraudulent (academic freedom does not protect plagiarism and deceit). Protecting academic freedom also requires ensuring that faculty status turns on a faculty member's views only where the holding of those views clearly supports a judgment of competence or incompetence.

The information upon which we have based our comments has come to us primarily from Professor McLin, and we appreciate that you may have additional information that might alter our interpretation of events. If so, we would welcome your further comments. Absent such further information, we urge that the administration immediately rescind Professor McLin's suspension and restore her rights as a tenured member of the faculty.

We look forward to your prompt response.

Sincerely,

*Anita Levy*

Anita Levy, Ph.D.
Senior Program Officer
Department of Academic Freedom, Tenure, and Governance

Enclosures via email

cc.     Mr. Bruce Martin, President, Board of Trustees of State Institutions of Higher Learning
        Dr. Alfred Rankins, Commissioner, State Institutions of Higher Learning
        Dr. Denise Gregory, Provost
        Professor Sophia Leggett, Vice President, Faculty Senate
        Professor Dawn McLin



555 New Jersey Ave., NW, Suite 600, Washington, DC 20001
**PHONE: 202.737.5900 • www.aaup.org**

<u>VIA ELECTRONIC MAIL</u>

August 22, 2024

Dr. Marcus L. Thompson
President
Jackson State University
Jackson, Mississippi

Dear President Thompson:

We have yet to receive a response to our August 12 letter concerning the case of Professor Dawn McLin. A copy of that letter is enclosed for your convenience.

The issues we raised in that letter remain of concern to us. We again urge that the administration immediately rescind Professor McLin's suspension and restore her rights as a tenured member of the faculty.

We look forward to your response.

Sincerely,

Anita Levy, Ph.D.
Senior Program Officer
Department of Academic Freedom, Tenure, and Governance

Enclosure via email

cc.    Mr. Bruce Martin, President, Board of Trustees of State Institutions of Higher
            Learning
       Dr. Alfred Rankins, Commissioner, State Institutions of Higher Learning
       Dr. Denise Gregory, Provost
       Professor Sophia Leggett, Vice President, Faculty Senate
       Professor Dawn McLin



555 New Jersey Ave., NW, Suite 600, Washington, DC 20001
PHONE: 202.737.5900 • www.aaup.org

AMERICAN ASSOCIATION OF
UNIVERSITY PROFESSORS

VIA ELECTRONIC MAIL

January 8, 2025

Dr. Marcus L. Thompson
President
Jackson State University
Jackson, Mississippi

Dear President Thompson:

It is deeply troubling that we have yet to receive a response to our two previous letters concerning the case of Professor Dawn McLin. Those letters are enclosed for your convenience. Among the concerns our letters addressed was the stated basis for seeking Professor McLin's dismissal on grounds of her alleged abuse of her position as faculty senate president. Our letter stated AAUP's longstanding position on the relationship of faculty governance to academic freedom that faculty have the legitimate right to criticize institutional policies and actions even when that speech is not uttered in a governing forum.

Professor McLin has subsequently advised the American Association of University Professors that the university's Faculty Personnel Committee (FPC) issued its findings and recommendations regarding her dismissal proceedings on November 20, 2024. We understand that the committee recommended that, the report states, "the termination process conclude and that Dr. McLin should be immediately reinstated as a full professor, with her suspension rescinded and her rights as a tenured faculty member fully restored." We also understand that, with almost two months having passed since the FPC issued its report and the semester having ended, you have yet to respond to its recommendations leaving Professor McLin in a state of professional limbo with no discernable prospect of being returned to her faculty duties and denied access to her $1.5 million dollar grant. Under AAUP-supported principles, as set forth in Regulation 5c [16] of our *Recommended Institutional Regulations*, the administration should normally accept the faculty committee's recommendation. If the president has objections, the matter should be returned to the faculty committee with objections specified, so that the committee can reconsider its recommendation before the president renders his or her final decision. Frankly, given the academic freedom dimensions of Professor McLin's case, we find the delay in this situation extremely disturbing.

While we hold little hope of your providing us with a substantive response, we would welcome, as always, hearing of a resolution that accords with our recommended standards. This has gone on long enough.

President Thompson
January 8, 2025
Page 2

Sincerely,

*Anita Levy*

Anita Levy, Ph.D.
Senior Program Officer
Department of Academic Freedom, Tenure, and Governance

cc.    Mr. Bruce Martin, President, Board of Trustees of State Institutions of Higher
            Learning
       Dr. Alfred Rankins, Commissioner, State Institutions of Higher Learning
       Dr. Denise Gregory, Provost
       Professor Chandar Lewis, Chair, Faculty Personnel Committee
       Professor Sophia Leggett, Vice President, Faculty Senate
       Professor Dawn McLin

# COVER SHEET
## Civil Case Filing Form
*(To be completed by Attorney/Party Prior to Filing of Pleading)*

**Court Identification Docket #**

| County # | Judicial District | Court ID (CH, CI, CO) | Case Year | Docket Number |
|---|---|---|---|---|
| 0 5 | 1 | C I | 2 0 2 5 | 0 2 1 4 |

**Local Docket ID**

| Month | Date | Year |
|---|---|---|
| 0 3 | 1 9 | 2 0 2 5 |

Mississippi Supreme Court
Administrative Office of Courts

Form AOC/01 (Rev 2020)

This area to be completed by clerk    Case Number if filed prior to 1/1/94

In the **CIRCUIT** Court of **HINDS** County — **FIRST** Judicial District

## Origin of Suit (Place an "X" in one box only)
- [ ] Initial Filing
- [ ] Remanded
- [ ] Reinstated
- [ ] Reopened
- [ ] Foreign Judgment Enrolled
- [ ] Joining Suit/Action
- [ ] Transfer from Other court
- [ ] Appeal
- [X] Other

## Plaintiff - Party(ies) Initially Bringing Suit Should Be Entered First - Enter Additional Plaintiffs on Separate Form

**Individual** McLin, Ph.D. | Dawn | Bishop | | |
| Last Name | First Name | Maiden Name, if applicable | M.I. | Jr/Sr/III/IV |

____ Check ( x ) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of

____ Check ( x ) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
D/B/A or Agency

**Business**

Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated

____ Check ( x ) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
D/B/A

**Address of Plaintiff**   103 Firefly Cove, Madison, MS 39110

**Attorney (Name & Address)**   Chadwick M. Welch, 368 Highland Colony Pkwy., Ridgeland, MS 39157    MS Bar No. 105588

____ Check ( x ) if Individual Filing Initial Pleading is NOT an attorney
Signature of Individual Filing:

## Defendant - Name of Defendant - Enter Additional Defendants on Separate Form

**Individual** | | | | |
| Last Name | First Name | Maiden Name, if applicable | M.I. | Jr/Sr/III/IV |

____ Check ( x ) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of

____ Check ( x ) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
D/B/A or Agency

**Business**  Jackson State University

Enter legal name of business, corporation, partnership, agency - If Corporation, indicate the state where incorporated

____ Check ( x ) if Business Defendant is acting in the name of an entity other than the above, and enter below:
D/B/A

**Attorney (Name & Address) - If Known**  Onetta Starling Whitley, Pope S.Mallette    MS Bar No.

____ Check ( x ) if child support is contemplated as an issue in this suit.*
*If checked, please submit completed Child Support Information Sheet with this Cover Sheet

## Nature of Suit (Place an "X" in one box only)

### Domestic Relations
- [ ] Child Custody/Visitation
- [ ] Child Support
- [ ] Contempt
- [ ] Divorce:Fault
- [ ] Divorce: Irreconcilable Diff.
- [ ] Domestic Abuse
- [ ] Emancipation
- [ ] Modification
- [ ] Paternity
- [ ] Property Division
- [ ] Separate Maintenance
- [ ] Term. of Parental Rights-Chancery
- [ ] UIFSA (eff 7/1/97; formerly URESA)
- [ ] Other

### Appeals
- [ ] Administrative Agency
- [ ] County Court
- [ ] Hardship Petition (Driver License)
- [ ] Justice Court
- [ ] MS Dept Employment Security
- [ ] Municipal Court
- [ ] Other

### Business/Commercial
- [ ] Accounting (Business)
- [ ] Business Dissolution
- [ ] Debt Collection
- [ ] Employment
- [ ] Foreign Judgment
- [ ] Garnishment
- [ ] Replevin
- [ ] Other

### Probate
- [ ] Accounting (Probate)
- [ ] Birth Certificate Correction
- [ ] Mental Health Commitment
- [ ] Conservatorship
- [ ] Guardianship
- [ ] Joint Conservatorship & Guardianship
- [ ] Heirship
- [ ] Intestate Estate
- [ ] Minor's Settlement
- [ ] Muniment of Title
- [ ] Name Change
- [ ] Testate Estate
- [ ] Will Contest
- [ ] Alcohol/Drug Commitment (Involuntary)

### Children/Minors - Non-Domestic
- [ ] Adoption - Contested
- [ ] Adoption - Uncontested
- [ ] Consent to Abortion
- [ ] Minor Removal of Minority
- [ ] Other

### Civil Rights
- [ ] Elections
- [ ] Expungement
- [ ] Habeas Corpus
- [ ] Post Conviction Relief/Prisoner
- [ ] Other

### Contract
- [ ] Breach of Contract
- [ ] Installment Contract
- [ ] Insurance
- [ ] Specific Performance
- [ ] Other

### Statutes/Rules
- [ ] Bond Validation
- [ ] Civil Forfeiture
- [ ] Declaratory Judgment
- [X] Injunction or Restraining Order
- [ ] Other

- [ ] Alcohol/Drug Commitment (Voluntary)
- [ ] Other

### Real Property
- [ ] Adverse Possession
- [ ] Ejectment
- [ ] Eminent Domain
- [ ] Eviction
- [ ] Judicial Foreclosure
- [ ] Lien Assertion
- [ ] Partition
- [ ] Tax Sale: Confirm/Cancel
- [ ] Title Boundary or Easement
- [ ] Other

### Torts
- [ ] Bad Faith
- [ ] Fraud
- [ ] Intentional Tort
- [ ] Loss of Consortium
- [ ] Malpractice - Legal
- [ ] Malpractice - Medical
- [ ] Mass Tort
- [ ] Negligence - General
- [ ] Negligence - Motor Vehicle
- [ ] Premises Liability
- [ ] Product Liability
- [ ] Subrogation
- [ ] Wrongful Death
- [ ] Other

IN THE __CIRCUIT__ COURT OF __HINDS__ COUNTY, MISSISSIPPI

__FIRST__ JUDICIAL DISTRICT, CITY OF _____

Docket No. _____   Docket No. If Filed
File Yr    Chronological No.    Clerk's Local ID   Prior to 1/1/94 _____

### DEFENDANTS IN REFERENCED CAUSE - Page 1 of ___ Defendants Pages
### IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET

**Defendant #2:**

**Individual:** _____  _____  ( _____ )  _____  _____
　　　　　Last Name　　　　　First Name　　　Maiden Name, if Applicable　Middle Init.　Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** __Mississippi Board of Trustees of State Institutions of Higher Learning__
　　　　Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** __9836__ Bar # or Name: __Pope S. Mallette__    *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Defendant #3:**

**Individual:** __Thompson, Ph.D.__  __Marcus__  ( _____ )  __L.__  _____
　　　　　Last Name　　　　　First Name　　　Maiden Name, if Applicable　Middle Init.　Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** _____
　　　　Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** __9836__ Bar # or Name: __Pope S. Mallette__    *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Defendant #4:**

**Individual:** _____  _____  ( _____ )  _____  _____
　　　　　Last Name　　　　　First Name　　　Maiden Name, if Applicable　Middle Init.　Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

**Business** _____
　　　　Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:

D/B/A _____

**ATTORNEY FOR THIS DEFENDANT:** _____ Bar # or Name: _____    *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

# IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
## FIRST JUDICIAL DISTRICT

**DAWN BISHOP MCLIN, Ph.D.**

    *Plaintiff,*

    -vs.-                                Case No. 25-224

**JACKSON STATE UNIVERSITY,**
**THE MISSISSIPPI BOARD OF TRUSTEES OF**
**STATE INSTITUTIONS OF HIGHER**
**LEARNING, and MARCUS L. THOMPSON, Ph.D.**

    *Defendants.*

## SUMMONS

TO:    Marcus L. Thompson, Ph.D.
        1400 John R. Lynch St.
        Administration Tower
        Jackson, MS 39217   *or wherever he may be found*

### NOTICE TO DEFENDANT

**The Complaint attached to this summons is important and you must take immediate action to protect your rights.**

      You are required to mail or hand-deliver a copy of a written response to the Complaint to Chadwick M. Welch, Heidelberg Patterson Welch Wright, 368 Highland Colony Parkway Ridgeland, MS, 39157, the attorney for the Plaintiff. Your response to the Complaint must be mailed or delivered within thirty (30) days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

      You must also file the original of your response to the complaint with the Clerk of this Court within a reasonable time afterward.

      ISSUED under my hand and the seal of said Court, this the 19th day of March, 2025.



               Circuit Clerk of Hinds County, MS, First
               Judicial District

               By: _____
                   Circuit Clerk

ISSUED AT THE REQUEST & RETURN TO:

Chadwick M. Welch (MSB No. 105588)
HEIDELBERG PATTERSON WELCH WRIGHT
368 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel. 601.790.1583
cwelch@hpwlawgroup.com

<u>RETURN</u>

STATE OF MISSISSIPPI
COUNTY OF _____

(   ) I personally delivered a copy of the Summons and Complaint on the _____ day of 2024 to: _____ at _____.

(   ) After exercising reasonable diligence I was unable to deliver a copy of the Summons and Complaint to _____ within _____ County, Mississippi. I served the Summons and Complaint on the _____ day of _____, 2024, at the usual place of abode of said _____ by leaving a true copy of the Summons and Complaint with _____, who is the _____ (here insert wife, husband, son, daughter or other person as the case may be), a member of the family of the person served, above the age of sixteen years and, unwilling to receive the Summons and Complaint, and thereafter on the _____ day of _____, 2025. I mailed (by first class mail, postage prepaid) copies to the person served at his or her usual place of abode where the copies were left.

(   ) I was unable to serve the Summons and Complaint.

This the ____ day of _____, 2025.


_____
Process Server

3

## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

**DAWN BISHOP MCLIN, Ph.D.**

    *Plaintiff,*

    -vs.-

Case No. 25-224

**JACKSON STATE UNIVERSITY,**
**THE MISSISSIPPI BOARD OF TRUSTEES OF**
**STATE INSTITUTIONS OF HIGHER**
**LEARNING, and MARCUS L. THOMPSON, Ph.D.**

    *Defendants.*

### SUMMONS

TO:    The Mississippi Board of Trustees of State Institutions of Higher Learning
        3825 Ridgewood Road
        Jackson, MS 39211   *or wherever it may be found*

### NOTICE TO DEFENDANT

**The Complaint attached to this summons is important and you must take immediate action to protect your rights.**

    You are required to mail or hand-deliver a copy of a written response to the Complaint to Chadwick M. Welch, Heidelberg Patterson Welch Wright, 368 Highland Colony Parkway Ridgeland, MS, 39157, the attorney for the Plaintiff. Your response to the Complaint must be mailed or delivered within thirty (30) days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

    You must also file the original of your response to the complaint with the Clerk of this Court within a reasonable time afterward.

    ISSUED under my hand and the seal of said Court, this the 19th day of March, 2025.

Circuit Clerk of Hinds County, MS, First
Judicial District

By: _____
        Circuit Clerk



1

ISSUED AT THE REQUEST & RETURN TO:

Chadwick M. Welch (MSB No. 105588)
HEIDELBERG PATTERSON WELCH WRIGHT
368 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel. 601.790.1583
cwelch@hpwlawgroup.com

<u>RETURN</u>

STATE OF MISSISSIPPI
COUNTY OF _____

( ) I personally delivered a copy of the Summons and Complaint on the _____ day of

2024 to: _____ at _____.

( ) After exercising reasonable diligence I was unable to deliver a copy of the Summons

and Complaint to _____ within _____ County,

Mississippi. I served the Summons and Complaint on the _____ day of _____,

2024, at the usual place of abode of said _____ by leaving a true copy of the

Summons and Complaint with _____, who is the _____ (here insert

wife, husband, son, daughter or other person as the case may be), a member of the family of the

person served, above the age of sixteen years and, unwilling to receive the Summons and

Complaint, and thereafter on the _____ day of _____, 2025. I mailed (by first

class mail, postage prepaid) copies to the person served at his or her usual place of abode where

the copies were left.

( ) I was unable to serve the Summons and Complaint.

This the ___ day of _____, 2025.


_____
Process Server

_____

## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
### FIRST JUDICIAL DISTRICT

**DAWN BISHOP MCLIN, Ph.D.**

    *Plaintiff,*

    -vs.-                              Case No. **25-224**

**JACKSON STATE UNIVERSITY,**
**THE MISSISSIPPI BOARD OF TRUSTEES OF**
**STATE INSTITUTIONS OF HIGHER**
**LEARNING, and MARCUS L. THOMPSON, Ph.D.**

    *Defendants.*

### SUMMONS

TO:    Jackson State University
       1400 John R. Lynch St.
       Administration Tower
       Jackson, MS 39217   *or wherever it may be found*

### NOTICE TO DEFENDANT

**The Complaint attached to this summons is important and you must take immediate action to protect your rights.**

You are required to mail or hand-deliver a copy of a written response to the Complaint to Chadwick M. Welch, Heidelberg Patterson Welch Wright, 368 Highland Colony Parkway Ridgeland, MS, 39157, the attorney for the Plaintiff. Your response to the Complaint must be mailed or delivered within thirty (30) days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response to the complaint with the Clerk of this Court within a reasonable time afterward.

ISSUED under my hand and the seal of said Court, this the 19th day of March, 2025.

                          Circuit Clerk of Hinds County, MS, First
                          Judicial District

                          By: _____
                                    Circuit Clerk

1

ISSUED AT THE REQUEST & RETURN TO:

Chadwick M. Welch (MSB No. 105588)
HEIDELBERG PATTERSON WELCH WRIGHT
368 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel. 601.790.1583
cwelch@hpwlawgroup.com

<u>RETURN</u>

STATE OF MISSISSIPPI
COUNTY OF _____

( ) I personally delivered a copy of the Summons and Complaint on the _____ day of

2024 to: _____ at _____.

( ) After exercising reasonable diligence I was unable to deliver a copy of the Summons

and Complaint to _____ within _____ County,

Mississippi. I served the Summons and Complaint on the _____ day of _____,

2024, at the usual place of abode of said _____ by leaving a true copy of the

Summons and Complaint with _____, who is the _____ (here insert

wife, husband, son, daughter or other person as the case may be), a member of the family of the

person served, above the age of sixteen years and, unwilling to receive the Summons and

Complaint, and thereafter on the _____ day of _____, 2025. I mailed (by first

class mail, postage prepaid) copies to the person served at his or her usual place of abode where

the copies were left.

( ) I was unable to serve the Summons and Complaint.

This the _____ day of _____, 2025.


_____
Process Server

3

## IN THE CIRCUIT COURT OF HINDS COUNTY, MISSISSIPPI
## FIRST JUDICIAL DISTRICT

**DAWN BISHOP MCLIN, Ph.D.**                                                    **PLAINTIFF**

**V.**                                                                 **CASE NO. 25-224**

**JACKSON STATE UNIVERSITY,**
**THE MISSISSIPPI BOARD OF TRUSTEES OF**
**STATE INSTITUTIONS OF HIGHER**
**LEARNING, and MARCUS L. THOMPSON, Ph.D.**                **DEFENDANTS**

<u>**NOTICE OF REMOVAL**</u>

Jackson State University, The Mississippi Board of Trustees of State Institutions of

Higher Learning, and Marcus Thompson, Ph.D. ("Defendants") notify the Clerk of Court, under

28 U.S.C. § 1446(d), of removal of this action to the United States District Court for the

Southern District of Mississippi, Northern Division. The removal was based on federal question

jurisdiction as provided by 28 U.S.C. §§ 1331, 1441 and 1446. A copy of the Notice of Removal

(without exhibits) is attached as Exhibit "A". The removal of this action to the United States

District Court has been affected in accordance with 28 U.S.C. § 1446, under which this action is

to proceed no further.

THIS, the 19th day of March 2025.

Respectfully submitted,

**JACKSON STATE UNIVERSITY, THE**
**MISSISSIPPI BOARD OF TRUSTEES OF**
**STATE INSTITUTIONS OF HIGHER**
**LEARNING, and MARCUS L. THOMPSON,**
**Ph.D.**

_/s/ J. Andrew Mauldin_
POPE S. MALLETTE (MB No. 9836)
J. ANDREW MAULDIN (MB No. 104227)
_Attorneys for these Defendants_

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035
*pmallette@mayomallette.com*
*dmauldin@mayomallette.com*

## **CERTIFICATE OF SERVICE**

I, J. Andrew Mauldin, one of the attorneys for Defendants, certify that I have this day filed the above and foregoing document with the Clerk of the Court using the MEC system which sent notification of such filing to all attorneys of record.

THIS, the 19th day of March 2025.

/s/ J. Andrew Mauldin
J. ANDREW MAULDIN

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**DAWN BISHOP MCLIN, Ph.D.**                                                                      **PLAINTIFF**

**V.**                                                              **CIVIL ACTION NO. _____**

**JACKSON STATE UNIVERSITY,
THE MISSISSIPPI BOARD OF TRUSTEES OF
STATE INSTITUTIONS OF HIGHER
LEARNING, and MARCUS L. THOMPSON, Ph.D.**                                  **DEFENDANTS**

<u>**NOTICE OF REMOVAL**</u>

Jackson State University, the Mississippi Board of Trustees of State Institutions of

Higher Learning, and Marcus Thompson, Ph.D. ("Defendants") hereby give notice of removal of

this action from the Circuit Court of Hinds County, Mississippi, to the United States District

Court for the Southern District of Mississippi, Northern Division, based on federal question

jurisdiction under 28 U.S.C. § 1331, and represent the following:

1. On January 10, 2025, Plaintiff Dawn Bishop McLin, Ph.D., filed a Complaint in this

   Court, styled "*Dawn Bishop McLin, Ph.D., vs. Jackson State University, The*

   *Mississippi Board of Trustees of State Institutions of Higher Learning, and Marcus*

   *Thompson, Ph.D.*," bearing cause number 3:25-CV-19-DPJ-ASH.

2. On March 5, 2025, Defendants filed a Motion to Dismiss seeking dismissal of

   Plaintiff's federal Complaint in its entirety [Doc. 12].

3. On March 19, 2025, Plaintiff voluntarily dismissed her federal action instead of

   responding to Defendants' pending motion to dismiss, and filed the instant Complaint

   in the Circuit Court of Hinds County, Mississippi, styled "*Dawn Bishop McLin,*

   *Ph.D., vs. Jackson State University, The Mississippi Board of Trustees of State*

   *Institutions of Higher Learning, and Marcus Thompson, Ph.D.*," bearing Civil Action

EXHIBIT "A"

No. 25-224. A copy of the original Complaint (with attachments) is attached as Exhibit "A".

4. Because Plaintiff asserts claims in this action that arise under the laws of the United States, namely, the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Removal is appropriate under 28 U.S.C. § 1441.

5. As required by 28 U.S.C. § 1446(d), Defendants will promptly deliver a copy of this Notice to the Clerk of the Circuit Court of Hinds County, Mississippi, along with a request that the Circuit Court of Hinds County, Mississippi, proceed no further with this action.

6. As required by 28 U.S.C. § 1446(b), Defendants file this Notice of Removal within 30 days after receipt of the paper from which it could first be ascertained this matter was removable from the Hinds County Circuit Court to this Court.

7. Under 28 U.S.C. § 1446(d), Defendants shall promptly give notice of the filing of this Notice of Removal to all parties in this action.

8. Defendants will promptly request a copy of the entire state court record and will file it once received pursuant to the Local Rules.

WHEREFORE, Defendants request this action be removed to the United States District Court for the Southern District of Mississippi, Northern Division, and request this Court assume full and complete jurisdiction over this action and grant such other and further relief as the Court may deem just and proper.

THIS, the 19th day of March 2025.

Respectfully submitted,

**JACKSON STATE UNIVERSITY, THE MISSISSIPPI BOARD OF TRUSTEES OF STATE INSTITUTIONS OF HIGHER LEARNING, and MARCUS L. THOMPSON, Ph.D.**

*/s/ J. Andrew Mauldin*
POPE S. MALLETTE (MB No. 9836)
J. ANDREW MAULDIN (MB No. 104227)
*Attorneys for Defendants*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035
*pmallette@mayomallette.com*
*dmauldin@mayomallette.com*