**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**DAWN BISHOP MCLIN, Ph.D.**                                                                 **PLAINTIFF**

**V.**                                             **CIVIL ACTION NO. 3:25-CV-193-HTW-ASH**

**JACKSON STATE UNIVERSITY,
THE MISSISSIPPI BOARD OF TRUSTEES OF
STATE INSTITUTIONS OF HIGHER
LEARNING, and MARCUS L. THOMPSON, Ph.D.**                           **DEFENDANTS**

<u>**DEFENDANT MARCUS THOMPSON'S MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS**</u>

Plaintiff Dawn Bishop McLin ("McLin") has now twice brought lawsuits against Jackson

State University ("JSU"), JSU's President Marcus L. Thompson ("President Thompson"), and

the Mississippi Board of Trustees of State Institutions of Higher Learning (the "IHL Board"),

asking the court to referee her ongoing personnel proceedings.

McLin voluntarily dismissed her previous federal lawsuit instead of responding to

Defendants' arguments, opting to try essentially the same claims before a different audience in

state court. Defendants removed that second action to this Court, and President Thompson now

asks this Court to grant him qualified immunity and dismiss the claims asserted against him in

his individual capacity. McLin is on paid administrative leave despite her claims of wrongful

termination, and her allegations fail to state any plausible claim for relief regardless. This Court

should grant President Thompson qualified immunity and dismiss McLin's claims against him.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

JSU is an arm of the State of Mississippi and one of Mississippi's institutions of higher

learning under the control of the IHL Board. *See*, e.g., *Meredith v. Jackson State Univ.,* 2010

---

[1] Defendants dispute Plaintiff's construction of the facts but accept her well-pleaded allegations for
purposes of the present motion only.

U.S. Dist. LEXIS 13835, *4, 2010 WL 606402 (S.D. Miss. Feb. 17, 2010). Mississippi law requires the IHL Board to "adopt such bylaws and regulations from time to time as it deems expedient for the proper supervision and control of the several institutions of higher learning," gives it "power and authority to elect the heads of the various institutions of higher learning, and to contract with all deans, professors and other members of the teaching staff, and all administrative employees of said institutions," and provides "it shall be the policy of the board to permit the executive head of each institution to nominate for election by the board all subordinate employees of the institution over which he presides." Miss. Code Ann. § 37-101-15(c), (f).

IHL Policy "empowers the Commissioner and the Institutional Executive Officers of the several institutions to make all appointments and promotions of faculty and staff," except in certain circumstances, and requires each IHL institution to "develop, maintain, and follow written employment and/or hiring procedures for both faculty and staff." Policies and Bylaws, §§ 401.0102; 801.06, Miss. Bd. Trs. State Insts. Higher Learning (last amended July 20, 2023).[2] IHL Policy requires that a tenured faculty member be given an opportunity for a hearing before being terminated for cause, but expressly provides that, "[a]t the discretion of the Institutional Executive Officer, any faculty member's salary may be paid, and he/she may be relieved of all teaching duties, assignments, appointments and privileges when he/she is dismissed for any reasons stated above or pending a termination hearing." Policies and Bylaws, §403.0104.

JSU's Faculty Handbook likewise provides that a tenured faculty member shall not be terminated for cause without the faculty member being afforded the opportunity for a hearing,

---

[2] Publicly available at http://www.mississippi.edu/board/downloads/policiesandbylaws.pdf. The court may take judicial notice of official policies and governmental websites. *See*, e.g., *Jathanna v. Spring Branch Indep. Sch. Dist.*, 2012 LEXIS 173686, *8 n. 1, 2012 WL 6096675 (S.D. Tex. Dec. 7, 2012).

and that in all cases "the faculty member shall be informed in writing of the proposed action

against him/her and that he/she has the opportunity to be heard in his/her own defense, and

"[a]ny decision made by a hearing body shall be a recommendation to the Institutional Executive

Officer." JSU Faculty Handbook, p. 48.[3] In accord with IHL Policy, the Handbook provides that

"[a]t the discretion of the Institutional Executive Officer, any faculty member's salary may be

paid, and he/she may be relieved of all teaching duties, assignments, appointments and privileges

when he/she is dismissed for any reasons stated above or pending a termination hearing." *Id*. at

p. 49.

Consistent with those policies, on August 1, 2024 President Marcus Thompson provided

written notice to JSU faculty-member Dawn McLin that he intended to recommend that she be

terminated from her position as a tenured faculty member, and that she had the right to request a

hearing on his intended recommendation. Pl.'s Compl. p. 7; Ex. "A" to Compl. President

Thompson further informed McLin that she would be "placed on administrative leave with pay

during the pendency of this process," and that her "roles and responsibilities in connection with

grants [she was] administering [would] be re-assigned." *Id*. President Thompson stated that while

his rationale would be supplemented in advance of any hearing to provide a more detailed

explanation of her particular actions and conduct that informed his intention to recommend her

termination, "[g]enerally speaking, and without limitation," his intended recommendation was

based on McLin's "hostile conduct, bullying, harassment, and intimidation of fellow JSU

employees (including those over whom [she had] no supervisory responsibilities), interference in

the re-accreditation process, abuse of [her] position as president of the Faculty Senate, and

interference in department business operations." *Id*.

---

[3] Publicly available at https://www.jsums.edu/hr/files/2012/11/Faculty_Handbook_12_2011.pdf.

McLin requested a hearing before a faculty review board. Pl.'s Compl. at p. 7. That hearing before the Faculty Personnel Committee (the "Committee") was initially set for September 10, 2024, but was subsequently rescheduled for October 25, 2024 due to the death of one of the Committee members. *Id*. at p. 8. McLin lodges a number of grievances related to the specific procedures of that hearing, but she concedes that she attended and participated in the hearing with the assistance of counsel. *Id*. at 8, 9.

McLin selectively pleads around the Committee's findings, highlighting only those parts she likes and omitting the remainder from review. As alleged by McLin, however, the Committee recommended, in part, "that the termination process conclude and that Dr. McLin [] be immediately reinstated as a full professor, with her suspension rescinded and her rights as a tenured faculty member fully restored." Compl. pp. 11-12.

Following the filing of McLin's current Complaint, President Thompson recommended the termination of McLin's employment.[4] McLin has additional review available from the IHL Board, and remains on paid administrative leave pending the final resolution of her personnel proceedings.

The legal theories in McLin's new Complaint are nearly identical to her previous complaint, but she now seeks an "emergency temporary restraining order followed by a preliminary and permanent injunction" in addition to money damages. She again seeks to hold JSU and the IHL Board liable for breaching her contract by "terminating [her] without valid reasons." Compl. p. 13. She also asserts Section 1983 claims against JSU, the IHL Board, and President Thompson for claimed procedural due process and substantive due process violations.

---

[4] That letter was issued after Plaintiff's Complaint was filed and is neither referenced in nor attached to Plaintiff's Complaint, but Defendants nonetheless provide the Court notice of the status of those proceedings for the Court's information.

*Id*. at 13-16. Finally, she sues President Thompson in his individual capacity for claimed tortious interference with contract and business expectancies, and intentional infliction of emotional distress. *Id*. at 17-19. She fails to articulate which of these theories supports her request for emergency injunctive relief but asks the Court to enter an injunction rescinding her current suspension.

## STANDARD OF LAW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for failure to state a claim. "To avoid dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570 (internal quotation omitted). In making this determination, courts accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The court does not, however, accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

## ARGUMENT

### 1. *President Thompson is entitled to qualified immunity.*

Designed to protect "all but the plainly incompetent or those who knowingly violate the law," the qualified immunity defense "requires courts to enter judgment in favor of a government

employee unless the employee's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Morse v. Frederick*, 551 U.S. 393, 429 (2007) (Breyer, J., concurring in part and dissenting in part) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff has the burden to establish that the alleged conduct violates clearly established law.  *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) (*citing Thompson v. Upshur County, TX*, 245 F.3d 447, 456 (5th Cir. 2001).

The question of qualified immunity is to be determined as a matter of law and requires a conduct-based inquiry, not an abstract legal or factual inquiry. *E.g., Elder v. Holloway*, 510 U.S. 510, 515-16 (1994); *Wood,* 134 S.Ct. at 2067. The pleading must describe conduct "**clear to a reasonable officer that his conduct was unlawful in the situation he confronted**." *Wood v. Moss*, 134 S.Ct. 2056, 2067 (2014) (emphasis added); *Ashcroft,* 131 S.Ct. at 2083; *Stauffer v. Gearhart,* 741 F.3d 574, 583-84 (5th Cir. 2014).

To disprove the applicability of qualified immunity, a plaintiff must satisfy a two-prong test. *Marquez v. Garnett*, 567 F. App'x 214, 216 (5th Cir. 2014). At the dismissal stage, the court must determine whether the facts alleged make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If so, the issue becomes objective legal reasonableness, and the court must decide whether the right at question was clearly-established at the time of defendant's alleged misconduct. *Id.; Baker v. Pound*, 75 F.3d 190, 198 (5th Cir. 1996).  To be clearly established, the plaintiff must point to controlling authority or a "robust consensus of cases of persuasive authority" that placed some constitutional question faced by the Individual Defendants "beyond debate." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014); *Ashcroft v. al-*

*Kidd*, 563 U.S. 731, 741-42, 746 (2011). McLin fails to plausibly allege President Thompson violated her constitutional rights, much less clearly established constitutional law.

President Thompson is a government official whose position involves the exercise of discretion, and he is entitled to qualified immunity as to McLin's claims. For the reasons set forth below, McLin's allegations against President Thompson fail to allege that he has violated any clearly established law. Accordingly, he is entitled to qualified immunity as to McLin's procedural due process and substantive due process claims.

### 2. *McLin has not stated a procedural due process violation against President Thompson.*

The Due Process clause protects only against deprivations of constitutionally protected property or liberty interests. *Depree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009); *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 344 (5th Cir. 2006). Where a public employee has a protected property interest, she is entitled to "notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995). The essential requirements "are notice and an opportunity to respond." *Finch v. Fort Bend Ind. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003).

Here, McLin asserts that her procedural due process rights were violated because: 1) she was prohibited from having an attorney advocate directly on her behalf during her faculty hearing, 2) Dr. Thompson did not immediately act on the committee's recommendation and instead kept her on paid administrative leave pending final resolution, and 3) certain of the hearing procedures violated JSU's internal policies. Pl.'s Compl. pp. 14-16.

McLin cites *Jones v. Louisiana Board of Supervisors* in support of her contention that these issues violated her due process rights. 809 F.3d 231, 236 (5th Cir. 2015). While *Jones* supports her assertion that a tenured faculty member is generally entitled to notice and an

opportunity to be heard before being terminated, it undermines the viability of her due process

claims here. In *Jones*, the Fifth Circuit expressly rejected a faculty-member's argument that he

was entitled to a face-to-face hearing with the ultimate decisionmaker before being terminated.

*Id.* at 239.

        Unlike McLin's theory here, the court did not require that the employee be represented

by counsel (or that the employee's counsel be allowed to actively participate in the hearing

process), and McLin has failed to identify any case imposing such a requirement. Moreover, as

courts within the Fifth Circuit have consistently held, "a person's placement on administrative

leave does not amount to a deprivation of a protected property interest." *See Brokaw v. Dallas*

*Ind. Sch. Dist.*, 2008 U.S. Dist. LEXIS 70518, *21, 2008 WL 4191512 (N.D. Tex. Sept. 11,

2008); *see also Cleveland v. Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46, 105 S. Ct. 1487

(1985) (observing that a public employer can avoid constitutional due process issue by

suspending a public employee with pay); *see also Kermode v. Univ. of Miss. Med. Cntr.*, 2011

U.S. Dist. LEXIS 105082, *15-16, 2011 WL 4351340 (S.D. Miss. Sept. 15, 2011) ("Separation

with pay is not the same as termination."). McLin's claim that she remained on administrative

leave even after her hearing also fails to support her due process claim.

        And as underscored by the Fifth Circuit, "a university's failure to follow its own internal

rules does not always establish [] a due process violation." *Trudeau v. Univ. of N. Tex.*, 861 F.

App'x 604, 610 (5th Cir. 2021) (quoting *Wigginton v. Jones*, 964 F.3d 329, 338 (5th Cir. 2020));

*see also Martin v. Memorial Hosp.*, 130 F. App'x 1143, 1147 (5th Cir. 1997) ("[A] property

interest falling under due process protections must be established by reference to some outside

source—such as state law or contract."). Accordingly, McLin's claims regarding the alleged

violation of internal policies also fail to support her due process claim.

While McLin claims she was entitled to notice and an opportunity to be heard before being terminated, her allegations establish that she was provided notice and an opportunity to be heard, and that she is in fact still on paid administrative leave and has additional review available from the IHL Board. McLin was provided notice and an opportunity to be heard before President Thompson recommended her termination, and still has further review available. McLin has not alleged a plausible procedural due process violation, and Dr. Thompson is entitled to qualified immunity.

### 3. *McLin has not stated a substantive due process violation against President Thompson.*

The substantive component of the Due Process Clause bars certain arbitrary government actions, even if their procedural implementation is sufficient. *Salcido v. Univ. of S. Miss.*, 2013 U.S. Dist. LEXIS 75191, *26, 2013 WL 2367877 (S.D. Miss. May 29, 2013), *Dismukes v. Hackathorn*, 802 F. Supp. 1442, 1447 (N.D. Miss. 1992). "To state a substantive due process claim, a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest." *Williams v. Tex. Tech Univ. Health Scis. Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993).

"In determining whether the government's action has been arbitrary in the constitutional sense, the Court asks whether the government action '**shocks the conscience**.'" *Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 548 (W.D. La. 2016) (emphasis added). Only the "most egregious official conduct" is arbitrary in the constitutional sense. *Hess v. Bd. of Trustees of S. Ill. Univ.*, 149 F. Supp. 3d 1027, 1044 (S.D. Ill. 2015) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997)). Essentially, the employee "must show that a public employer's decision 'so lacked a basis in fact' that it could be said to have been made 'without professional judgment.'" *Jones v. La. Bd. of Supervisors of*

9

*Univ. of La. Sys.*, 809 F.3d 231, 240 (5th Cir. 2015) (quoting *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998)).

This high bar recognizes that "federal court is usually 'not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.'" *McMullen v. Starkville Oktibbeha Consol. Sch. Dist.*, 200 F. Supp. 3d 649, 659 (N.D. Miss. 2016) (quoting *Jones v. La. Bd. of Sup'rs of Univ. of La. Sys*., 809 F.3d 231, 240 (5th Cir. 2015)). As recently held by the Fifth Circuit in the context of another professor aggrieved by an adverse employment decision, that bar is not met where the employee's allegations reveal that his side of the story was heard by a faculty review board, the university president, and the IHL Board, but simply rejected in favor of another account. *Cohly v. Miss. Insts. Of Higher Learning*, 2024 U.S. App. LEXIS 380, *7, 2024 WL 65432 (5th Cir. Jan. 5, 2024).

Here, McLin claims that JSU and President Thompson "acted arbitrarily and capriciously in terminating [her] tenured professorship and her research grants." Compl. p. 15. As also revealed by her allegations, though, McLin has not yet been finally terminated and remains on paid administrative leave. Moreover, both IHL policy and JSU policy expressly provide that the Institutional Executive Officer may place a tenured faculty member on paid administrative leave pending a termination decision following hearing. While President Thompson has recommended her termination, her allegations reveal that his recommendation came after an extensive investigation and hearing process, and that McLin has further review available. McLin's conclusory assertion that some of the reasons for her termination were protected under the First Amendment and that the remaining reasons were "vague, contrived, and unsubstantiated" is insufficient to push her claim across the line of plausibility.

McLin remains on paid administrative leave, and she has failed to plead a plausible substantive due process claim. Even if she is ultimately terminated, she has failed to allege facts sufficient to support a plausible substantive due process claim.

### 4. *McLin has not stated a plausible claim for tortious interference.*

In order to state a claim for tortious interference with contract, the plaintiff must establish: 1) the acts were intentional and willful; 2) they were calculated to cause damage to the plaintiff in plaintiff's lawful business; 3) they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and 4) actual loss occurred. *Smith v. Antler Insanity*, LLC, 58 F. Supp. 3d 716, 726 (S.D. Miss. 214); *see also Par Industries, Inc. v. Target Container Co*., 708 So. 2d 44, 48 (Miss. 1998), *Jones v. Miss. Inst. of Higher Learning*, 2018 Miss. App. LEXIS 378, *34, 2018 WL 3853409 (Miss. Ct. App. 2018).

As another Mississippi federal court has noted, the "nature of the actor's conduct is a chief factor in determining whether the conduct is improper or not, despite its harm to the other person." *Hightower v. Aramark*, 2012 U.S. Dist. LEXIS 31597, *14, 2012 WL 827113 (N.D. Miss. Mar. 9, 2012) (citing Rest. 2D of Torts § 767 cmt. c.). First, then, the defendant must have had knowledge of the business relationship and "acted with substantial certainty that the act would interfere with the business relationship." *Amsouth Bank v. Gupta*, 838 So.2d 205, 214 (Miss. 2002).

Additionally, the defendant must have acted with an unlawful purpose, and "[t]he general rule in this state is that there is no tortious interference when one has a justifiable interest and reason for acting." *Vestal v. Oden*, 500 So.2d 954, 957 (Miss. 1986); *see also Morrison v.*

*Mississippi Enter. for Tech*., 798 So.2d 214, 219 (Miss. Ct. App. 2001) ("tortious interference requires 'intermeddling . . . *without sufficient reason*'") (emphasis in original).

Moreover, specifically in the employment context, "[c]onduct related to a legitimate, employment-related objective constitutes justifiable acts, which cannot give rise to an inference of malice." *Id*. (internal quotation omitted). "A person in a position of authority on behalf of another is privileged to interfere with the contract between his principal and another." *Jones v. Gulf Coast Rest. Grp., Inc*., 2021 U.S. Dist. LEXIS 11797, *14, 2021 WL 232127 (S.D. Miss. Jan. 21, 2021) (quoting *Boland v. Miss. Dep't of Pub. Safety*, No. 3:17- 2019 U.S. Dist. LEXIS 196358, 2019 WL 5970247, at *4 (S.D. Miss. Nov. 13, 2019)).

This privilege applies if the person is "acting within the scope of that authority and without bad faith." *Id*. "Bad faith" is present "when an intentional act occurs whose purpose is to cause injury to business without right or good cause . . . ." *Id*. (quoting *Morrison v. Miss. Enter. for Tech., Inc*., 798 So.2d 567, 575-76 (Miss. Ct. App. 2001)).

Finally, the plaintiff in a tortious interference case must also show that any actual damages were proximately caused by the defendant's actions. *See Alfonso v. Gulf Publ. Co*., 87 So.3d 1055, 1060 (Miss. 2012); *Silver Dollar Sales, Inc. v. Battah*, 391 So.3d 845, 853 (Miss. Ct. App. 2024). "It is essential both to aver and prove the defendant's knowledge of the contract in question," and "[s]uch knowledge is not pleaded sufficiently by a mere allegation that [the defendant] maliciously prevented performance of the contract." *J. T. Shannon Lumber Co. v. Gilco Lumber, Inc*., 2010 U.S. Dist. LEXIS 3811, *22, 2010 WL 234996 (N.D. Miss. Jan. 15, 2010).

Here, McLin's allegations reveal that President Thompson was acting within the scope of his authority and with justifiable purpose in notifying her of his intent to recommend her

12

termination, placing her on paid administrative leave pending her termination hearing and

process, and then recommending her termination. IHL and university policy delegate to him the

authority and responsibility to make such decisions and expressly authorize the Institutional

Executive Officer to place an employee such as McLin on paid administrative leave pending the

outcome of those proceedings.

Those policies specifically provide that the Institutional Executive Officer may re-assign

all of the employee's "teaching duties, assignments, appointments, and privileges," and that the

Institutional Executive Officer may also recommend an employee's termination. McLin has

failed to plausibly allege that President Thompson acted with an unlawful purpose in doing just

what IHL and University policy authorize and empower him to do as the chief executive officer

of the university. McLin has failed to state a plausible tortious interference claim either as to her

employment or her claimed business expectancies.

### 5. *McLin has not stated a plausible claim for intentional infliction of emotional distress.*

"To establish a claim for intentional infliction of emotional distress, the plaintiff must

show that the defendant through "extreme and outrageous conduct intentionally or recklessly

cause[d] severe emotional distress to another...." *Waters v. Allegue*, 980 So. 2d 314, 318-19

(Miss. Ct. App. 2008) (quoting *Peoples Bank & Trust Co. v. Cermack*, 658 So.2d 1352, 1365

(Miss.1995)). The claim requires proof of the following elements: (1) the defendant acted

willfully or wantonly toward the plaintiff; (2) the defendant's actions are ones which evoke

outrage or revulsion in a civilized society; (3) the acts were directed at the plaintiff or intended to

cause harm to the plaintiff; (4) the plaintiff suffered severe emotional distress as a result of

defendant's actions; and (5) such resulting emotional distress was foreseeable from the

intentional acts of the defendant. *Carter v. Reddix*, 115 So.3d 851, 858 (Miss. Ct. App. 2012).

Again, while McLin disagrees with the recommended personnel action here, she has not plausibly alleged that President Thompson's actions were extreme or outrageous or that intentionally or recklessly caused her severe emotional distress. The Court should dismiss her intentional infliction of emotional distress claim.

### 6. *McLin has not justified her request for emergency injunctive relief.*

While McLin's Complaint requests emergency injunctive relief, Local Rule 7 provides that "[a]ny written communication with the court that is intended to be an application for relief or other action by the court must be presented by a motion in the form prescribed by this rule." L.U.Civ.R. 7(b). McLin has not filed a separate motion, and the Court should decline to consider her request for emergency injunctive relief presented only in her Complaint.

Even if the Court were to consider her extraordinary request for injunctive relief, however, it would still be unsupported. A temporary restraining order or preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking emergency preliminary relief must establish [1] that she is likely to succeed on the merits, [2] that she is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in her favor, and [4] that an injunction is in the public interest." *Id.* at 20. A preliminary injunction should only be granted if the movant has "clearly carried the burden of persuasion on all four prerequisites." *Thompson v. Attorney General of the State of Miss.*, 129 F. Supp. 3d 430, 433 (S.D. Miss. 2015) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)) (*cleaned up*).

In addition to these requirements, where the plaintiff seeks mandatory injunctive relief, which requires a party to take action, the injunction "should not be issued unless the facts and law clearly favor the moving party." *Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 543

14

(W.D. La. 2016); *Harris v. Wilters*, 596 F.2d 678, 680 (5th Cir. 1979). Further, as frequently noted by district courts within the Fifth Circuit, "[a]bsent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction." *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 570 (S.D. Tex. 2014). This is in part because "a delay in seeking a preliminary injunction demonstrates a lack of urgency and undercuts the need for a preliminary injunction." *Wireless Agents, LLC v. T-Mobile, USA, Inc.*, 2006 U.S. Dist. LEXIS 36590, *5 (N.D. Tex. Jun. 6, 2006); *see also Premium Parking Serv., LLC v. Olivier*, 2023 U.S. Dist. LEXIS 143019, *8 (E.D. La. Aug. 16, 2023) (internal quotations omitted) ("A plaintiff's delay in seeking a temporary restraining order is held as an indication that there is no immediate threat," and such a delay may be "grounds for denial because such delay implies a lack of urgency and irreparable harm.").

As set forth above, McLin has failed to clearly show that she has a substantial likelihood of success on her claims. Neither her constitutional claims nor her state law claims state a plausible claim for relief, and she has not established a likelihood of success on any of those claims, much less one justifying an award of injunctive relief.

Moreover, she also has not shown a likelihood of irreparable harm absent an injunction reinstating her to her employment duties. While she claims that early registration for upcoming classes will begin soon and that she cannot be assigned any classes to teach at JSU if not immediately reinstated, her argument is completely unsupported, and she fails to offer any argument or explanation as to why she could not be assigned classes at a later date. And while she claims that her Ph.D. students have been forced to seek other dissertation committee members, she claims that this has already happened and it in no way appears tied to her claimed

upcoming deadline. Finally, while she claims she is "not able to administer grants obtained before her wrongful termination," she identifies no discernible harm from that claimed wrong.

And despite her new assertion that a no-hearing emergency temporary restraining order is needed to avoid generically asserted immediate and irreparable injury, loss, and damage, McLin filed much the same lawsuit several months ago and failed to even request injunctive relief. Her own delay in seeking relief does not justify now depriving Defendants of their right to fully respond and assert their defenses as provided under the Federal Rules of Civil Procedure and otherwise applicable law. The Court should reject McLin's claims for emergency injunctive relief.

**CONCLUSION**

President Thompson has recommended McLin's termination, but McLin remains on paid administrative leave pending final resolution of her employment proceedings. McLin's claims against President Thompson are barred by qualified immunity and otherwise fail to state a claim for relief. This Court should grant President Thompson qualified immunity and dismiss her claims against him.

THIS the 9th day of April 2025.

Respectfully submitted,

**MARCUS L. THOMPSON, Ph.D.**

*/s/ J. Andrew Mauldin*
POPE S. MALLETTE (MB No. 9836)
J. ANDREW MAULDIN (MB No. 104227)
*Attorneys for Defendants*

OF COUNSEL:

MAYO MALLETTE PLLC
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Telephone: (662) 236-0055
Facsimile: (662) 236-0035
*pmallette@mayomallette.com*
*dmauldin@mayomallette.com*