**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**DAWN BISHOP MCLIN, Ph.D.**

    *Plaintiff,*

    -vs.-                                                   **Case No. 3:25-cv-193-HTW-ASH**

**JACKSON STATE UNIVERSITY,
THE MISSISSIPPI BOARD OF TRUSTEES OF
STATE INSTITUTIONS OF HIGHER
LEARNING, and MARCUS L. THOMPSON, Ph.D.**

    *Defendants.*

**DAWN BISHOP MCLIN, Ph.D.'s MEMORANDUM IN SUPPORT
OF HER RESPONSE IN OPPOSITION TO
<u>DEFENDANT MARCUS THOMPSON'S MOTION TO DISMISS</u>**

Plaintiff Dawn Bishop McLin, Ph.D. ("Dr. McLin"), submits her Memorandum in Support of her Response in Opposition to Defendant Marcus Thompson's Motion to Dismiss [ECF No. 5 & 6]. In support, Dr. McLin states and argues as follows:

**I.    Introduction**

The law is clearly established that university officials may not retaliate against professors for exercising their First Amendment rights. The law is equally clear that individuals with a protected property interest are entitled to be heard "at a meaningful time and in a meaningful manner" before deprivation of that property interest. And the law clearly prohibits the "arbitrary and capricious" deprivations of protected property interests.

Dr. McLin has sufficiently and plausibly alleged that Dr. Thompson violated this law as part of his crusade to remove her from JSU. Accordingly, Dr. Thompson is not entitled to qualified

immunity with respect to Dr. McLin's constitutional claims. And Dr. Thompson is not entitled to qualified immunity for any of Dr. McLin's state-law claims.

Dr. McLin's claims are well pleaded. She has alleged, and she will prove, that Dr. Thompson violated her constitutional rights, interfered with her contract for tenured professorship, and caused her emotional distress. Dr. Thompson advances no persuasive legal argument to the contrary. He simply asks this Court to reject Dr. McLin's well-pleaded allegations and accept his conclusory arguments that he acted within the scope of authority and discretion. But the allegations and uncontested facts show otherwise, and Dr. Thompson does not even attempt to defend his refusal to accept the unanimous recommendation of JSU's Faculty Personnel Committee ("FPC") to immediately reinstate Dr. McLin. Nor does Dr. Thompson address the FPC's finding that he acted arbitrarily in trying to terminate Dr. McLin. And Dr. Thompson ignores Dr. McLin's allegations that his campaign against her was motivated, at least in part, by her outspokenness of matters of public concern while serving as the President of JSU's Faculty Senate.

For those and the foregoing reasons, Dr. Thompson's motion should be denied.

**II.     Procedural History and Background Facts**

Dr. McLin initially invoked this Court's jurisdiction by filing her complaint on January 10, 2025. *See McLin v. Thompson, et al.*, No. 3:25-cv-00019-DPJ-ASH (S.D. Miss.). In response, Defendants invoked their Eleventh Amendment right to sovereign immunity, claimed they did not want to defend Dr. McLin's claims in a federal court, and filed a motion to dismiss. *See id.* [ECF No. 11]. Rather than engage in motions practice under the *Ex Parte Young* exception or other bases for establishing jurisdiction, Dr. McLin voluntarily dismissed her complaint and filed her lawsuit in the Hinds County Circuit Court. Defendants then ***removed*** the action back to this Court within one business day. *See* Notice of Removal [ECF No. 1].

That procedural history illustrates and underscores the lengths Dr. Thompson—and perhaps JSU and/or IHL (it is not clear which Defendant has been calling the shots)[1]—are willing to go to frustrate Dr. McLin's ability to prosecute her claims and obtain relief. Just like he abused his authority at JSU, Dr. Thompson abused the judicial process at the very inception of this lawsuit to create delay, needlessly multiply the litigation, and increase Dr. McLin's litigation expenses to wear her down. Under ordinary circumstances, Defendants' invocation of Eleventh Amendment immunity, followed by their prompt removal to federal court after Dr. McLin re-filed in state court, might be sanctionable under Rule 11 or the Mississippi Litigation Accountability Act. But Dr. McLin is not interested in pursuing sanctions or becoming distracted from pursuing her chief objective: to obtain redress for the injuries Dr. Thompson inflicted upon her.

It is against that backdrop that Dr. McLin's core allegations should be considered in analyzing Dr. Thompson's motion to dismiss. Dr. McLin's complaint contains painstaking detail about the bases for her claims, but the salient facts are these:

Dr. McLin has a rich history with JSU, and she has made significant contributions to its stature in the community and in broader academia. Compl. ¶¶ 8 – 13. Dr. McLin served in high-profile leadership roles, including as the President of JSU's Faculty Senate. In that role, Dr. McLin sometimes communicated decisions that were unpopular or not well received—including decisions critical of existing JSU leadership or academic offices. Compl. ¶¶ 13 – 18.

---

[1] For instance, it is unclear why JSU and IHL would invoke Eleventh Amendment immunity in response to Dr. McLin's initial suit, only to immediately join in a removal back to federal court when Dr. McLin re-filed in state court. Nor is it clear what role JSU is playing in this litigation given Dr. Thompson's recent separation from JSU, or whether JSU has ratified (or intends to ratify) Dr. Thompson's treatment of Dr. McLin and his attempt to terminate Dr. McLin over the unanimous objection of JSU's FPC. It is also unclear whether Dr. Thompson's interests remain aligned with JSU's and IHL's interests, given his separation from JSU.

Dr. Thompson took offense at Dr. McLin's criticisms, and he determined to terminate her tenured professorship and reassign her grants. Compl. ¶¶ 18 – 20. He launched an investigation and conjured allegations that were trivial and protected by the First Amendment, most of which pre-dated (by months or years) his arrival at JSU. Compl. ¶¶ 20 – 21. Dr. McLin had never been counseled about any of these alleged transgressions, and none of these alleged transgressions had ever been reported to IHL in Dr. McLin's annual Post-Tenure Reviews. Compl. ¶ 22. To the contrary, only weeks before Dr. Thompson's notice of his intention to terminate her, Dr. McLin had her contract renewed and had been selected by JSU to serve as a Title IX adjudicator. Compl. ¶¶ 25 – 26.

Dr. McLin invoked her right to a hearing before JSU's FPC to challenge Dr. Thompson's contrived allegations against her. On October 25, 2024, the JSU FPC convened the hearing (the "Hearing"). Dr. McLin was forced to put on her case first before fully knowing the allegations against her or who would testify against her (Dr. Thompson never produced a witness list, even though Dr. McLin was required to produce one). Dr. McLin also requested her employment contracts, Post-Tenure Reviews, her personnel file, and JSU's investigative file of Dr. McLin. JSU refused to provide the information. Compl. ¶¶ 31 – 32. Dr. McLin was not allowed to have a lawyer participate in the Hearing, even though Dr. Thompson had a lawyer present to cross-examine Dr. McLin's witnesses and otherwise engage in advocacy on his behalf. Compl. ¶¶ 36 – 39.

After Dr. McLin put on her preemptively defensive case, Dr. Thompson elected to not put on any case. He introduced no evidence and called no witnesses to testify. Thereafter, the FPC unanimously recommended Dr. McLin's immediate reinstatement and criticized Dr. Thompson's arbitrary violation of Dr. McLin's (and other faculty's) due process rights. Compl. ¶ 46. Other entities, including the American Association of University Professors ("AAUP") and Foundation

4

for Individual Rights and Expression ("FIRE") took notice, and both appealed directly to Dr. Thompson to reinstate Dr. McLin. Dr. Thompson ignored them all. Compl. ¶¶ 34 – 35.

For months, Dr. Thompson simply refused to act on the FPC's recommendation, intentionally leaving Dr. McLin in a state of professional limbo. Compl. ¶¶ 50 – 52. When forced to act, no doubt in response to this lawsuit, Dr. Thompson urged IHL to terminate Dr. McLin even over the objection of a unanimous FPC. Through this lawsuit, Dr. McLin seeks redress for these injuries.

## II. Argument

### A. Legal Standards.

To survive a motion to dismiss, a complaint only needs to contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In deciding the motion to dismiss, the court may consider: (1) the facts alleged; (2) documents attached to the complaint; and (3) matters of which judicial notice may be taken. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

The complaint must be liberally construed in the plaintiff's favor and all facts must be presumed true when evaluating a motion to dismiss. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). "[A]ny ambiguities or doubts regarding the sufficiency of the claim" should be resolved in the plaintiff's favor. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003).

### B. Dr. Thompson is not entitled to qualified immunity.

Dr. Thompson asks this Court to ignore Dr. McLin's well-pleaded facts and grant him sweeping immunity from his misconduct, simply because he is a public employee and without reference to any claims asserted against him. But the law does not cloak university presidents in absolute immunity by virtue of their position alone. As a threshold matter, "state-law claim[s] [are] ineligible for a qualified immunity defense." *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1169 (Miss. Ct. App. 2007); *see also id.* ("immunity does not bar actions against the state or its political subdivisions brought on a breach of contract theory") (quotation and citation omitted). Thus, the qualified immunity defense—if it can apply at all—hypothetically could apply only to Dr. McLin's constitutional claims against Dr. Thompson.

Public officials, like Dr. Thompson, do not have state-authorized discretion to violate constitutional rights. To the contrary, Dr. Thompson can be individually liable for Dr. McLin's constitutional claims if his conduct was not "objectively reasonable in light of clearly established law." Qualified immunity does not protect public officials who "knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

As discussed below, Dr. Thompson is not entitled to qualified immunity on either of Dr. McLin's constitutional claims. And Dr. Thompson's motion to dismiss on qualified immunity grounds should be summarily denied with respect to Dr. McLin's state-law claims. *Suddith*, 977 So. 2d at 1169.

### C. Dr. McLin has plausibly alleged serious procedural due process violations.

"The protections of the Due Process Clause, whether procedural or substantive,…apply to deprivations of constitutionally protected property…interests." *Klinger v. Univ. S. Miss.*, 612 F. App'x 222, 227 (5th Cir. 2015). "[F]aculty with tenure have an expectation of continued

6

employment beyond the term of the[ir] contracts." *Suddith*, 977 So. 2d at 1170; *see also Jones v. La. Bd. of Supervisors of Univ. of La. Sys.*, 809 F.3d 231, 237 (5th Cir. 2015).

"Where a tenured public university faculty member is terminated, due process requires both notice and an opportunity to be heard." *Jones v. La. Bd. Supervisors of Univ. of La. Sys.*, 809 F.3d 231, 237 (5th Cir. 2015). "The type of hearing necessary—the process due—is a function of the context of the individual case." *Id*. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976 (citation and quotation omitted).

Dr. McLin plausibly alleged multiple ways in which Dr. Thompson violated her right to procedural due process.

First, Dr. Thompson prevented Dr. McLin from relying on an attorney to advocate on her behalf or otherwise participate in the Hearing. Compl. ¶ 62. By contrast, Dr. Thompson and JSU presented the case against Dr. McLin exclusively through an attorney. Compl. ¶ 62. In other words, Dr. Thompson availed himself of legal assistance in attempting to terminate Dr. McLin while simultaneously depriving Dr. McLin of that same right. Compl. ¶ 62. This disparity was obviously intended to give Dr. Thompson a legal advantage to which Dr. McLin was not entitled.

Second, Dr. McLin was forced to disclose her witnesses in advance of the Hearing, but Dr. Thompson did not disclose his. Compl. ¶ 65. In addition, Dr. McLin was required to present her defensive case first, without knowing the witnesses Dr. Thompson would call against her or what evidence he intended to use to justify her termination. Compl. ¶ 65. Stated another way, Dr. McLin was forced to anticipate—and rebut—the witnesses Dr. Thompson might call and the evidence he

7

might introduce.[2] That is not fair notice. *See Miss. State Bd. of Contractors v. Hobbs Const., LLC*, 291 So. 3d 762, 773-74 (Miss. 2020) (a notice of hearing that does not provide respondent with "opportunity to know the charges…and to present a responsive defense" violates procedural due process).

Third, Dr. Thompson violated JSU's own policies in the manner in which he proceeded to terminate Dr. McLin's employment. He refused to act on the FPC's unanimous recommendation to immediately reinstate Dr. McLin even though JSU's policy states the "investigation must move forward as quickly as is practically possible under the circumstances." Compl. ¶ 64. Yet Dr. Thompson did not act on the FPC's recommendation for over four months (even though he put on no witnesses or evidence against Dr. McLin at the Hearing). Nor did Dr. Thompson follow JSU's policy of progressive discipline, warning, or other corrective action. He simply determined to terminate Dr. McLin just weeks after her contract was renewed for alleged conduct that occurred months and years before her contract was renewed multiple times. Compl. ¶ 64. Dr. Thompson's flagrant violation of and/or failure to follow JSU's policies as they relate to discipline or removal of tenured faculty confirms the procedural due process violations.

Dr. Thompson's reliance on *Jones* to establish fair procedure does not help him. He cites *Jones* for the proposition that a face-to-face hearing is not constitutionally required. That is a strawman argument and not in issue here. *Jones* does not address the obvious and intentional disparity with respect to Dr. Thompson's employing counsel to advocate on his behalf (and to cross-examine Dr. McLin's witnesses) while, at the same time, prohibiting Dr. McLin from

---

[2] As it turned out, Dr. Thompson did not call any witnesses adverse to Dr. McLin and he did not introduce any evidence against her. This underscores the fact that Dr. Thompson abused the hearing process and intended to press the termination of Dr. McLin irrespective of the FPC's recommendation. Dr. Thompson's conduct objectively compels the conclusion that he considered and treated the Hearing as a sham.

utilizing counsel in any meaningful way. Moreover, *Jones* does not address the unfair, backwards sequencing of proof at the Hearing.

Nor does Dr. Thompson's invocation of *Trudeau* apply. Dr. Thompson cites *Trudeau* for the proposition that "a university's failure to follow its own internal rules does not *always* establish a due process violation," (emphasis added), but the issue in *Trudeau* did not relate to procedural due process – it related to whether the plaintiff had a constitutionally protected property interest at all. Dr. McLin undisputedly has a protected property interest in her tenured professorship, which is established both by "state law [and] contract." *Trudeau*, 861 F. App'x 604, 610 (5th Cir. 2021).

### D. Dr. McLin has plausibly alleged serious substantive due process violations.

"The protections of the Due Process Clause, whether procedural or substantive,…apply to deprivations of constitutionally protected property…interests." *Klinger v. Univ. S. Miss.*, 612 F. App'x 222, 227 (5th Cir. 2015). "[F]aculty with tenure have an expectation of continued employment beyond the term of the[ir] contracts." *Suddith*, 977 So. 2d at 1170; *see also Jones v. La. Bd. of Supervisors of Univ. of La. Sys.*, 809 F.3d 231, 237 (5th Cir. 2015).

"Public officials violate substantive due process rights if they act arbitrarily or capriciously." *Edionwe v. Bailey*, 860 F.3d 287, 293 (5th Cir. 2017). University administrators who subject tenured faculty to adverse action for exercising a First Amendment right are not entitled to qualified immunity. *Kostic v. Texas A&M Univ. at Commerce*, 11 F.Supp. 3d 699, 725 (N.D. Tex. 2014) (recommending termination of professor for exercise of First Amendment right "was not objectively reasonable in light of clearly established law").

Dr. McLin has plausibly alleged retaliation for exercising her First Amendment right – *i.e.*, Dr. Thompson terminated her employment for turning her back on a public speaker. That fact alone—which Dr. Thompson neither disputes nor addresses—disqualifies him from qualified

9

immunity. Dr. McLin has more broadly alleged that Dr. Thompson's campaign against her was motivated by his disdain for Dr. McLin's work—and public criticisms—in her role as the President of JSU's Faculty Senate. *See* Compl., ¶¶ 15 – 19. Such conduct is plainly protected under the First Amendment:

> [T]eachers possess constitutionally protected rights of free association….The [F]irst [A]mendment protects the right of a n individual to speak freely, to advocate ides, to associate with others….And it protects the right of associations to engage in advocacy on behalf of their members. The government is prohibited from infringing upon these guarantees either by a general prohibition against certain forms of advocacy or by imposing sanctions for the expression of particular views it opposes.

*Smith v. Ark. State Highway Emp's. Loc. 1315*, 441 U.S. 463, 464 (1979); *see also Kostic*, 11 F.Supp. 3d at 725 – 26 (the law is clearly established, and university officers should objectively and reasonably know, that retaliating against a professor for expressing criticisms on matters of public concern violate First Amendment rights).

Dr. McLin has otherwise plausibly alleged Dr. Thompson acted arbitrarily and capriciously. The Hearing itself illustrates the strength of her allegations. After Dr. McLin put on her case, Dr. Thompson did not put on any case. The FPC then found, among other things, that Dr. Thompson's "*arbitrary* violation of substantive and procedural due process is a pattern which has impacted other faculty at JSU"[3] and it recommended Dr. McLin be "immediately reinstated as a full professor." Compl. ¶¶ 46, 49. Nevertheless—after waiting more than 120 days from the FPC report—Dr. Thompson ignored the FPC and recommended to IHL that Dr. McLin be terminated. These facts and undisputed chain of events demonstrate Dr. McLin's termination was pre-ordained. Dr. Thompson never intended to put on evidence at the Hearing, nor did he ever intend to follow

---

[3] Even the FPC found Dr. Thompson had acted arbitrarily.

the FPC's recommendation if it did not align precisely with his intentions. Dr. Thompson's handling of Dr. McLin's termination was arbitrary and capricious in every sense of the words.[4]

### E.  Dr. McLin has plausibly alleged tortious interference with her contract.

Two points are worth mentioning at the outset. First, Dr. Thompson's argument is replete with factual allegations that are not in the pleadings. He invokes various (unspecified) IHL and JSU policies that purport to bless his conduct and how he carried it out. *See, e.g.*, Def. Mem. Supp. Mot. Dismiss, *12 – 13 [ECF No. 6]. Second, Dr. McLin asserted a claim for breach of contract. No party—including Dr. Thompson—has sought dismissal of that claim, which necessarily means that claim is well pleaded. Dr. Thompson cannot credibly claim he lacked "knowledge of the contract in question." Def. Mem. Supp. Mot. Dismiss, *12.

Dr. Thompson contends the tortious-interference-with-contract claim should fail because he acted with a legitimate purpose—*i.e.*, he did not act in bad faith, without justifiable interest, and without an unlawful purpose. But that self-serving statement ignores all the ways, described above, in which Dr. Thompson violated Dr. McLin's constitutional rights. It also ignores the thrust of Dr. McLin's allegations, including the plausible allegation that Dr. Thompson interfered with Dr. McLin's tenured employment contract "for political reasons"—something a Mississippi statute plainly prohibits. *See* Miss. Code Ann. § 37-101-15(f). Dr. McLin's allegations establish that Dr. Thompson's relentless crusade to eradicate her from JSU was personal in nature.

Otherwise, Dr. Thompson suggests he has immunity because he was acting as the authority for his principal—*i.e.*, JSU. But in the context of what transpired, Dr. Thompson *was* JSU. He conceived of the decision to terminate Dr. McLin, he put her termination in motion, and he pressed

---

[4] Dr. Thompson claims that Dr. McLin remains on paid administrative leave, as if that somehow affects the analysis. It does not. Regardless, counsel for Dr. Thompson conceded at this Court's status conference on May 9, 2025 that Dr. McLin would no longer be paid after May 16, 2025.

11

her termination even when a duly constituted democratic body of JSU recommended Dr. McLin be immediately reinstated. In any event, Dr. Thompson is no longer the President of JSU, and this Court may take judicial notice of that fact. It is not clear whether JSU today, with its interim President, even supports Dr. Thompson's decision to terminate Dr. McLin. Discovery will bear that out.

Dr. Thompson also contends his interference did not proximately cause Dr. McLin's damages. That simply is not true. But for Dr. Thompson's interference with Dr. McLin's contract, Dr. McLin would not have lost the ability to teach and mentor students; Dr. McLin would not have had her grants reassigned; and Dr. McLin would not have been deprived of her salary. Dr. McLin has plausibly alleged Dr. Thompson's interference in her employment contract was the proximate cause of her damages.

Dr. McLin's claim is well pleaded and Dr. Thompson's motion to dismiss this claim should be denied.

### F.  Dr. McLin has plausibly alleged intentional infliction of emotional distress.

Dr. Thompson contends, in conclusory fashion, that Dr. McLin has not alleged his conduct was "extreme or outrageous" or caused her "severe emotional distress." Dr. McLin's complaint speaks for itself. She plausibly alleged that Dr. Thompson disregarded and violated her constitutional and contractual rights, and he did so intentionally in a manner calculated to cause her harm. Surely Dr. Thompson does not mean to suggest that the intentional violation of one's constitutional rights is not "extreme or outrageous" conduct that does not "evoke outrage or revulsion in a civilized society." Nor could he. Dr. McLin's claim for intentional infliction of emotional distress easily survives dismissal.

### G. Dr. McLin's right to injunctive relief.

Dr. McLin is entitled to injunctive relief, and she reserves the right to pursue it on a preliminary or temporary basis. Courts have roundly held that individuals, like Dr. McLin, have "a right to sue directly under the [C]onstitution to enjoin…federal officials from violating [their] constitutional rights." *Anibowei v. Barr*, 2019 WL 623090, *4 (N.D. Tex. Feb. 14, 2019) (quoting *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979) and collecting cases); *see also Green v. Mansour*, 474 U.S. 64, 73 (1985) (injunctions may issue to prevent continuing violations of federal law).

### III.  Conclusion

For the foregoing reasons, Dr. McLin respectfully requests this Court deny Defendant Marcus Thompson's Motion to Dismiss.

THIS, the 23d day of May, 2025.

        Respectfully submitted,

        **DAWN BISHOP MCLIN, PH.D.**

By:   */s/ Chadwick M. Welch*
       Chadwick M. Welch (MSB No. 105588)

       *Her attorney*

OF COUNSEL:

Heidelberg Patterson Welch Wright
368 Highland Colony Parkway
Ridgeland, Mississippi 39157
Tel. 601.790.1588
Fax 601.707.3075
cwelch@hpwlawgroup.com

**CERTIFICATE OF SERVICE**

I, Chadwick M. Welch, hereby certify that on this day I served the foregoing pleading which will be served upon all counsel of record via the Court's electronic filing system.

THIS, the 23d day of May, 2025.

                                              */s/ Chadwick M. Welch*
                                              Chadwick M. Welch